# CHARLESTON.

C. M. Elliott & Company v. James Johnson *et als.*

Submitted February 17, 1920. Decided March 9, 1920.

1. Fraudulent Conveyances—*Plaintiff Has Burden of Proving Fraud; Where Alleged Fraudulent Transaction is Between Near Relatives Slight Evidence will Shift to Defendant the Burden of Showing Bona Fides.*

   Generally the burden of proof rests on him who charges fraud and not on him whose conduct is charged to be fraudulent. But where the transaction assailed is between brothers or other near relatives, only slight evidence is required to shift the burden of showing its bona fides. (p. 710).

2. Same—*Proof May be Circumstantial.*

   In cases where it is difficult, if not impossible, to demonstrate by direct proof the fraudulent nature of the transaction, the circumstances surrounding the parties and their dealings one with another frequently constitute the only available evidence and may be sufficient to establish the fraudulent intent, in the absence of direct and satisfactory proof to the contrary. (p. 710).

3. Same—*Proof of Circumstances and Presumption of Susceptibility Relative to Favoritism May Shift Burden of Establishing Freedom From Fraud to the One Charged with Fraud.*

   Where the transaction assailed is between persons whose relationship by blood or marriage is so intimate as fairly to create the presumption of their susceptibility to influences prompting favoritism by the one towards the other, and the proof introduced or circumstances surrounding the dealings of the parties tend to show that such was the course pursued, the burden of establishing freedom from fraud as against creditors shifts to him who is charged therewith. (p. 710).

4. Same—*To Overcome Charge of Fraud Secured Creditors Must Prove More Than That Debt is Just and Amount Unpaid; Where Deed of Trust Represents Settlement of Mutual Accounts Between Brothers, the Secured Creditor Must Satisfactorily Explain Character of Each Item.*

   To overcome a charge of fraud and sustain a debt impugned as fraudulent, the creditor secured by the deed of trust must prove more than that the debt is just and the amount thereof

unpaid; and where it represents the final result of a settlement of mutual accounts between him and the debtor, his brother, comprising numerous and various items and transactions covering a period of several years, including charges and counter charges, checks and cash payments, he must also show with reasonable certainty by what combination of the several items such debt was ascertained, and in addition thereto satisfactorily explain the nature and character of each of such items, notes and other charges.   (p. 711).

5.   SAME—*Deed of Trust Securing Whole Debt Partially Invalid May be Wholly Vacated by Creditor so Far as He is Substantially Prejudiced Thereby.*

Though a debt may to some extent be valid, but otherwise invalid because fictitious or not established with the degree of certainty required by law, a deed of trust purporting to secure the whole of it may be vacated in its entirety at the suit of a creditor in so far as he is substantially prejudiced thereby.   (p. 711).

Appeal from Circuit Court, Tucker County.

Suit by C. M. Elliott & Co. against James Johnson and Raymond W. Johnson.   Decree for plaintiff, and defendant Raymond W. Johnson appeals.

*Affirmed.*

*A. Jay Valentine,* for appellant,
*Chas. D. Smith,* for appellee.

LYNCH, JUDGE:

The fraud charged in the original and amended bills and denied in the answers the decree entered in the cause found to exist, notwithstanding such denial, and from that decree Raymond W. Johnson alone appeals.   James Johnson and appellant are brothers, the former the grantor and the latter a beneficiary in the deed of trust dated August 24, 1916.   They were also parties defendant to the suit of *Smith* v. *Johnson et al,* heretofore pending in this court, the opinion in which is reported in 78 W. Va. 395.   The deed of trust purports to secure Tucker County Bank of Parsons in the payment of a note for $1,300 and Orlando Johnson, Troy Johnson and Raymond W. Johnson sureties thereon; Raymond W. Johnson in the payment of a note for $1,086 executed to him by the grantor, and "such sum as is found to be due to the said Raymond W. Johnson as bal-

ance on said consideration, costs and expenses of litigation which may be due upon settlement between Raymond W. Johnson and James Johnson, and for which amount, when such settlement is made, the said James Johnson is to execute his note," payable within two years from its date with interest.

The Tucker County Bank note, it is conceded, was for the purpose of raising a fund sufficient to pay the debts involved in the Smith-Johnson suit, and its genuineness is not controverted. "Whereas" paragraphs of the trust deed set out with much elaboration the conveyances by James Johnson to his brothers Raymond and Orlando, declared fraudulent and void in that suit, stating as the consideration therefor $2,500 paid in cash, a reconveyance by Raymond to James of the said land and an understanding between them as to the repayment of the consideration therein named, subject to a credit not now necessary to notice, and the payment of the costs and expenses incurred in defending the title involved in that suit, the amount of which costs and expenses was to be determined upon a settlement later to be made, but not made, if at all, until after the execution of the deed of trust, and the decree entered in this cause. The right to the benefit of this provision in the deed of trust neither one of the two brothers, James and Raymond, now insist upon; rather they impliedly admit lack of genuineness and enforceability as a charge against the land conveyed as security therefor.

Thus there is eliminated from this controversy the bank debt and the unascertained liability growing out of the matters involved in the former suit. That suit is important or worthy of note now only because of its tendency or weight or influence in ascertaining the personal attitude or inclination of the two brothers respecting the fraud charged against them in this suit, not only in regard to the debt of $1,086, but also the unascertained and abandoned liability in regard to the matters involved in the former suit.

Though described in the trust deed as a note for $1,086, the parties immediately concerned in the creation of that liability, if it be such, now admit that it never assumed that form, but resulted from the combination of one or more prior notes and the various items of unsettled accounts held by each brother against the other, ranging in dates from January 22, 1912, to

July 28, 1916, the last item antedating the trust less than one month, or to be exact, only 27 days. Neither in their answers nor in their testimony does either Raymond or James Johnson pretend to have made any attempt to settle or adjust between themselves these accounts, before or since the deed of trust was executed, in order to ascertain how or in whose favor the balance stood. Nor did either Lipscomb or Scott, the commissioners to whom the cause was referred in turn, attempt to do so, judged by the reports filed by them, the last of which served as the basis of the decree complained of. Read and considered together they merely exhibit mutual accounts covering a period of four and a half years and ranging in items, some of them less than one dollar some of them less than five dollars, and none for more than $114.75, the gross amount of which, all considered, seems impossible of satisfactory ascertainment to accord with the debt secured to appellant. Neither report of the commissioners, neither of the Johnsons, and no other person called to testify on their behalf, pretend to speak with any degree of definiteness or precision with regard to the real status of the accounts, and by no apparent combination or elimination of items, charges and countercharges, including notes and checks, is it reasonably possible to ascertain a balance sufficient to indicate with certainty a liability against James Johnson in favor of his brother Raymond which added to the note would aggregate $1,086, the amount named in the trust. The parties most vitally concerned as debtor and creditor utterly fail, indeed did not seriously attempt, to disclose the mode, manner or method pursued by them to determine the amount growing out of such accounts. If that result is even approximately attainable by any reasonable process of computation or combination of the items of the accounts in whatever form they may exist, upon these defendants devolves the duty to show how or by what method they ascertained that amount. Apparently what they undertook to do, and did, was to produce a list of selected items of an account or accounts which, together with notes for various amounts without dates or other explanation, make a total sum of $1,086. Naturally, and therefore reasonably, the presumption is that, as they are supposed to have kept the accounts, they were familiar with the numerous items composing them and for that reason could

explain them. But they produced no books, no memoranda, nothing to show the correctness of the items except checks for various amounts, the total of which, including the checks interchanged by the parties and exhibited to Lipscomb, some of which appear twice in the accounts, exceeds $1,086, exclusive of the duplications and the note, which, it is said, constitutes part of that sum. We think this failure on their part affords ground sufficient to permit the reasonable inference of the existence of a purpose unduly to encumber the land conveyed to secure the debts and liabilities of James Johnson.

The mere relationship of these defendants, it is true, does not of itself have such significance as warrants condemnation of the transaction they attempted to consummate for their own mutual benefit and advantage. If bona fide, dealings between brothers stand upon the same plane as dealings between strangers; they are not presumptively fraudulent. The chief difference in regard to transactions between those who are and between those who are not so related or connected by the ties of kinship or marriage is not so much a difference in kind as it is in degree and the burden of proof requisite to give their dealings the appearance characteristic of justice and fairness, when assailed as fraudulent. As a general rule the burden of proof rests on him who charges fraud and not on him whose conduct is charged to be fraudulent. But where the transaction assailed is between brother and brother or other near relatives, only slight evidence is required to shift the burden of showing its bona fides. *Mankin* v. *Davis,* 82 W. Va. 757; *Carlsbad Mfg. Co.* v. *Kelley,* 84 W. Va. 190, 100 S. E. 65. Frequently, however, it is extremely difficult, if not impossible, to demonstrate by direct proof the fraudulent nature of the transaction, and in such cases the circumstances surrounding the parties and their dealings one with another often constitute the only available evidence and may be sufficient to establish the fraudulent intent. *Florence W. McCarthy Co.* v. *Saunders,* 83 W. Va. 612, 98 S. E. 800. Therefore where, as here, the transaction assailed is between persons whose relationship by blood or marriage is so intimate as fairly to create the presumption of their susceptibility to influences prompting favoritism by the one towards the other, and the proof introduced or circumstances surrounding the dealings

of the parties tend to show that such was the course pursued, the burden of establishing freedom from fraud as against creditors shifts to him who is charged therewith. *Carlsbad Mfg. Co.* v. *Kelley, supra.* In such case the law imposes upon the latter the duty to show with reasonable certainty the genuineness of the transaction, and requires a court of equity to scrutinize it with the utmost diligence to ascertain whether it is in fact fraudulent, and if so, to cancel and annul it at the suit of a plaintiff whose rights are affected injuriously thereby. *North American Coal & Coke Co.* v. *O'Neal,* 82 W. Va. 186, 195. As said in point 5 of the syllabus in *Colston* v. *Miller,* 55 W. Va. 490: "Relationship between the parties, by blood or affinity, calls upon the court for careful and close scrutiny of the transaction and the conduct of and evidence offered by the grantee." See also *Knight* v. *Capito,* 23 W. Va. 639; *Bierne* v. *Ray,* 37 W. Va. 571; *Wood* v. *Harmison,* 41 W. Va. 376.

To overcome a charge of fraud and sustain a debt impugned on that score, a defendant must do more than state the debt is just and the amount unpaid. Nor is it sufficient to produce notes, checks, accounts of cash payments and other similar or like items originating in various small transactions, as trading horses or other animals, without any explanation other than that revealed by the documents. There must appear some correlation between them and the fact to be proved. Their presence without explanation signifies but little where the relevancy is doubtful. Both must unite and agree in order to establish the fact in dispute. Where they disagree and are irreconcilable, they furnish no substantial aid in solving the issue as to the real character of a particular transaction. *Coal & Coke Co.* v. *O'Neal,* cited.

The same rule obtains and requires the production and proof of the source and origin of the $916 note which is said to be included in the $1,086 debt secured by the trust deed. If its genuineness be conceded, the concession cannot affect the ultimate result of this discussion. Though the trust deed may to that extent secure an honest liability or indebtedness, it is tainted, nevertheless, by contact with the part that does not represent such a debt. Courts almost invariably hold invalid an entire conveyance where a material part of the debt which it

purports to secure is fictitious or had no actual or substantial existence, or if it had, its existence is not established with that degree of certainty required by law. 1 Moore on Fraudulent Conveyances, p. 229; Bump on Fraudulent Conveyances (4th Ed.) p. 46; *Baldwin* v. *Short,* 125 N. Y. 553. See also *Gilbert* v. *Peppers,* 65 W. Va. 355, pt. 5. Syl.

Perceiving no error in the decree, we affirm it.

*Affirmed.*