WRIGHT v. FIRST NAT. BANK OF BEAVER CITY.

No. 4069. Decided May 6, 1924. (226 Pac. 671.)

1. BANKRUPTCY—FINDING THAT CREDIT ASSOCIATION REPRESENTED ALL CREDITORS OF BANKRUPT EXCEPT CREDITORS SECURING ALLEGED PREFERENCE SUSTAINED. A finding that a credit association rep-

resented all creditors of a bankrupt, except a creditor securing an alleged preference, sustained.

2. APPEAL AND ERROR—FINDINGS OF TRIAL COURT HELD NOT REVIEW-ABLE BY APPELLATE COURT.  Where trial court findings were supported by substantial testimony in the record, and no effort was made to point out in what way evidence was insufficient to sustain findings, it could not be reviewed by the appellate court.

3. BANKRUPTCY—CREDITOR'S AGREEMENT CLAIMING LIEN BY VIRTUE OF LEVY WITH OTHER CREDITORS OF BANKRUPT HELD FOUNDED ON SUFFICIENT CONSIDERATION.  Where a creditor was claiming a lien against a bankrupt's property by a levy under an attachment made more than four months prior to filing of a second petition in bankruptcy, an agreement founded on the lien by which creditor was to bid in the merchandise and fixtures of the bankrupt on execution sale· of its levy, for amount of its lien, which was then to be paid by an association representing other creditors and certificate of sale assigned to it, was founded on a legal consideration, and sufficient to justify court in refusing to disturb it, even at suit of trustee in bankruptcy.

4. BANKRUPTCY—ACT DID NOT AFFECT VALID LIEN CREATED BY LEVY FOUR MONTHS PRIOR TO FILING OF PETITION.  Bankruptcy Act, § 67f (U. S. Comp. St. § 9651), does not affect a lien created by a levy made under an attachment more than four months prior to filing of a petition in bankruptcy.

Appeal from District Court, Fifth District, Beaver County; *Wm. F. Knox*, Judge.

Action by Walter Wright against the First National Bank of Beaver City.  Judgment for defendant, and plaintiff appeals.

AFFIRMED.

*Wallace B. Kelly*, of Salt Lake City, for appellant.

*O. A. Murdock*, of Beaver, for respondent.

GIDEON, J.

In this action appellant, as trustee in bankruptcy of the Farmers' & Stockgrowers' Mercantile Company, hereinafter called mercantile company, a corporation, seeks to recover an alleged preferential transfer suffered and permitted by the mercantile company in favor of respondent, First National Bank of Beaver City.

The complaint alleges that on the 12th day of January, 1922, a petition in involuntary bankruptcy was filed in the United States District Court against the mercantile company; that on the 7th day of February following that company was adjudged a bankrupt; that on the 13th day of March following, Walter Wright, appellant, was appointed trustee of the estate of said bankrupt. It is further alleged that on the 6th day of January, 1922, respondent, as creditor, obtained a preference over other creditors of the same class in the sum of $5,326.55 by reason of a levy made by the sheriff of Beaver county upon the merchandise of the mercantile company under an execution issued upon a judgment against the mercantile company in favor of the respondent. It is also alleged that a sale was had under that execution on January 14th; that at the time of the levy and sale the respondent knew or had reason to believe that the mercantile company was insolvent, and that respondent would, by such levy and sale, obtain a preference over other creditors, and that said respondent did obtain a preference over other creditors in the amount named.

Judgment was asked for the amount of the preference with interest from the date of filing suit.

In the answer respondent admits the levy and sale under the execution; alleges that for more than six months prior thereto it had been a judgment creditor of the mercantile company. It is also alleged in the answer that upon the filing of the complaint by respondent against the mercantile company on June 1, 1921, a writ of attachment had been issued and certain goods of the mercantile company seized under such writ. The answer denies the bank's knowledge of the insolvency, and also denies that the bank had reasonable ground to believe that it would obtain a preference.

Other facts in the nature of an estoppel are alleged as a

defense against appellant in his representative capacity. The
facts so far as material will appear in the course of the opin-
ion. The district court made findings and entered judgment
dismissing the complaint of appellant. From that judgment
this appeal is prosecuted.

The controlling facts appearing in the record may be
stated as follows: On or about the 1st day of June, 1921, the
mercantile company was and had been a Utah corporation
conducting a general merchandise business in Beaver City,
this state. Prior to that date it executed two promissory
notes, one to the respondent bank and the other to the State
Bank of Milford. The amount of the two notes was in excess
of $4,400. The Milford bank note was assigned to respondent.
On June 1, 1921, upon the institution by the respondent bank
of a suit upon these two notes, a writ of attachment was issued
and a levy made upon certain goods, namely, boots, shoes,
and groceries, belonging to the mercantile company. No
levy was made upon the other merchandise of that company.
Judgment was obtained on the notes on June 27, 1921, and
an execution was thereupon immediately issued by the clerk
of the court and delivered to the sheriff. That officer pro-
ceeded to post notices for the sale of the property levied upon
by the writ of attachment. On or about the 1st day of July,
1921, three or more of the creditors of the mercantile com-
pany filed a petition in involuntary bankruptcy against said
company and caused an order to be served on the sheriff of
Beaver county staying the intended sale of the goods claimed
to have been attached. The order apparently did not attempt
to disturb the lien created by the levy made under the writ of
attachment, but simply enjoined the sheriff from proceeding
with the execution. Thereafter, on or about the 16th day of
July, 1921, the representatives of the creditors of the mer-
cantile company together with the attorney representing the
respondent bank, met in Salt Lake City. At this meeting ways
and means were discussed looking to the rehabilitation of the
business of the mercantile company, or, rather, an attempt was
made to devise some means by which the business of that com-
pany could be continued, and, if possible, permit the company

to gradually pay off its indebtedness. As a result of that meeting a written agreement was drawn to be executed by the creditors, but apparently it was never signed. A Mr. White had been secretary and manager of the mercantile company from May 10, 1921. He was in charge of the business on June 1st. At the Salt Lake meeting it was agreed that the business should be continued under Mr. White's management with the understanding and under the direction that he make monthly reports to the creditors, including the respondent bank, and pay $1,000 per month on the past indebtedness. Apparently no affirmative action was taken by the sheriff releasing the levy made under the writ of attachment, but it does appear that the sheriff returned to the clerk of the court unsatisfied the execution issued on respondent's judgment of June 27, 1921. It appears that Mr. White, as manager, was permitted to sell such parts of the goods levied upon under the attachment as he found necessary in conducting the business of the company. After the meeting held in Salt Lake City, an answer was filed to the petition in involuntary bankruptcy denying the insolvency, and subsequently such proceedings were had in that matter whereby the petition was dismissed and the bankruptcy proceeding ended. Under the arrangement made at the Salt Lake meeting the business of the mercantile company was conducted for a period of approximately five months, and $2,000 was paid on the general indebtedness. An additional indebtedness, however, of $5,000 was incurred by Mr. White while so conducting the business. Subsequently, on January 6, 1922, another or supplemental execution was issued upon the judgment of June 27th. A levy was made under that execution on the entire stock of merchandise and fixtures of the mercantile company. A sale in bulk was had under that levy on January 14, 1922. At this sale the respondent bank became the purchaser.

It will probably enable the reader to get a better understanding of the facts and relationship of the parties to state at this point that the Utah Association of Creditmen is a corporation with its place of business in Salt Lake City. Its constitutent members are various merchants, wholesale and

retail, doing business in this intermountain country. One of its objects or duties, as found by the court, is "in the collection of debts owed to its several members." In other words, it represents creditors, and, as appears from the testimony, its chief duty or function is to look after the interests of the creditors of mercantile institutions that are unable to meet their obligations—to salvage the assets of insolvent mercantile concerns and realize all that is possible for the creditors. In its activities it represents other creditors in addition to the members of the association. Mr. Wright, appellant here, was the general manager of the credit association during all the time from June 12, 1921, to January 14, 1922.

The court found in this case that the credit association represented all of the creditors of the mercantile company except respondent. That finding is vigorously assailed in the brief of counsel for appellant as lacking support in the evidence and as being contrary thereto. It cannot be claimed that there is no substantial testimony in the record to support this finding. A few days prior to the sale of January 14, 1922, a Mr. Evans, admittedly a representative of the credit association, was in Beaver City, and had some negotiations with the attorney for the respondent bank. At that time the execution had been issued and the levy made upon the stock of merchandise. It is the testimony of two witnesses, Mr. White, the manager of the mercantile company, and Mr. Barton, cashier of the respondent bank, that Mr. Evans repeatedly stated in conversations with and in the presence of these witnesses that the association of creditmen represented all of the creditors of the mercantile company with the exception of the respondent. The same witnesses testified that in those conversations or negotiations Mr. Evans requested that the merchandise be sold in bulk. This request was granted, as stated by the witnesses, by reason of the fact that Mr. Evans represented all the creditors of the mercantile company other than the respondent bank. It was agreed, at the request of Mr. Evans, that, if there were no other bidders, the merchandise and fixtures would be sold

to the respondent for the amount of its claim, and that immediately after such sale the credit association would pay the bank the full amount of its claim and take an assignment of the certificate of sale to be issued by the sheriff.

There is an additional reason why this court cannot review the findings of the court that the credit association represented all creditors save the bank.    The error assigned is that the evidence is insufficient to sustain that finding of the court, but there is no effort or attempt to point out in what way the evidence is insufficient.    In a recent    2 opinion of this court (*Thomas* v. *Perry Irr. Co.*, 63 Utah 490, 227 Pac. 268,) the rule of the court and the authorities bearing upon that question are fully set forth.

The court found that under the above-mentioned agreement the merchandise was sold in bulk and the respondent bank became the purchaser; that after carrying out the agreement the amount of respondent's claim was paid by the credit association and an assignment of the certificate of sale given to that association.    The merchandise was resold to one of the larger creditors of the mercantile company for $10,000.    This finding of the court is supported by substantial competent evidence.

It also appears that on a date not designated, between January 1st and the date of the sale of the merchandise to the respondent, the association of creditmen obtained an assignment to it of all of the bills receivable of the mercantile company, and held that assignment on January 12, 1922, the date upon which the second petition for involuntary bankruptcy was filed in the United States District Court.

The trial court was of the opinion that the conduct and acts of Mr. Evans as representative of the credit association constituted an estoppel against the appellant as the trustee in bankruptcy from now insisting that the respondent had obtained a preference over other creditors.    The appellant's claim is that this conclusion of the court is not warranted by the facts.    Whether the acts and conduct of the parties constitute an estoppel operating against the appellant need not be determined.    We are satisfied that the record discloses

other grounds upon which the judgment should be affirmed. The respondent, as appears from the testimony, was claiming its rights by virtue of the lien created by its levy made under the writ of attachment. The levy under the attachment was made more than four months prior to the filing of the second petition in involuntary bankruptcy. If a valid lien was created by that levy and had not been released, it would not be affected by section 67f of the Congressional Bankruptcy Act (U. S. Comp. St. § 9651). Whether the respondent had lost or forfeited such lien we need not determine. If the respondent was claiming a lien against the property of the bankrupt, any agreement between the creditors founded upon such claim would be binding upon the parties to the agreement as based upon a legal consideration. Moreover, it appears from the testimony that the officers of the credit association were desirous that the assets of the mercantile company be released from any claim by reason of the judgment of the bank, and also be reelased from the control of the officers of the mercantile company so that the entire assets in some way might be placed under the control of the officers of the association of creditmen. As stated above, the association of creditmen had obtained an assignment of all the bills receivable of the mercantile company. One of the reasons for the desire to eliminate the bank and the officers of the mercantile company is shown by the subsequent acts in transferring the stock of merchandise and fixtures to one of the principal creditors. That transfer was made, and the creditor has since that time been carrying on the business at the same place. The sale under the execution, pursuant to the agreement, effectually transferred and took away from the mercantile company its entire property and any control over the same. It likewise eliminated the bank from any further consideration as a creditor. In other words, there seems to have been a completely executed contract between the respondent and the representative of the other creditors, supported by sufficient consideration to justify a court in refusing to disturb it even at the suit of a trustee in bankruptcy who, in that capacity, is a representative of the general creditors.

Complaint is also made that the court failed to make findings upon material issues presented (a) as to the insolvency of the mercantile company, and (b) as to whether the respondent knew of such insolvency or had reasonable cause to believe that it would get a preference by the sale. For the reasons stated, it is evident that the failure of the court to make findings upon those issues could not have been prejudicial to appellant.

We find no reversible error in the record. The judgment of the district court is affirmed, with costs.

THURMAN, FRICK, and CHERRY, JJ., and WOOLLEY, District Judge, concur.

WEBER, C. J., did not participate herein.