PAXTON v. PAXTON et al., WALKER et ux. v. SAME

No. 5038.   Decided November 16, 1932.   (15 P. [2d] 1051.)

*Willard Hanson,* of Salt Lake City, *B. L. Liberman,* of St. Louis, Mo. and *D. L. Stine,* of Ogden, for appellants.

*Grover A. Giles,* of Fillmore, and *J. D. Skeen,* of Salt Lake City, for respondents.

ELIAS HANSEN, J.

This is an appeal from a decree made and entered in two suits involving the same issues. The suits were consolidated at the trial. The decree appealed from disposes of both suits. In one suit W. R. Walker and Josephine B. Walker, his wife, sought the following relief: That a mortgage for the sum of $15,000 which Anthony Paxton, Jr., and his wife, Ida Paxton, executed and delivered to Frank Paxton be declared and adjudged fraudulent and void as against the two judgments, one for the sum of $194.63, and the other for $12,-281.86, held by the Walkers against Anthony Paxton, Jr., and Ida Paxton; that a deed whereby Anthony Paxton, Jr., and Ida Paxton, his wife, conveyed certain land in Millard county, Utah, to James C. Paxton be likewise declared and adjudged fraudulent and void as against the judgments held by the Walkers against the Paxtons; that the judgment liens held by the Walkers be declared and adjudged superior to the claim of Charles George to certain described lands in Millard county, Utah; and that the lands covered by the mortgage to Frank Paxton, the deed to James C. Paxton, and the land claimed by Charles George be sold to satisfy the two judgments held by the Walkers against Anthony Paxton, Jr., and Ida Paxton, his wife. The Walkers, by the allegations of their complaint, attack the mortgage to Frank Paxton, the deed to James C. Paxton, and the claimed right of Charles George to a conveyance, upon the ground of a failure of consideration to support the mortgage, the deed, and the agreement to convey, and upon the further ground that the transactions by which Frank Paxton, James C. Paxton, and Charles George claim an interest in the lands, or some of the lands in controversy, were entered into for the purpose of hindering, delaying, and defrauding the creditors of Anthony Paxton, Jr., and his wife, Ida Paxton, and particularly for the purpose of preventing the Walkers from collecting upon an obligation owing to them by Anthony Paxton, Jr., and his wife, Ida Paxton. As a defense to the suit brought by the Walkers, Frank Paxton set up the mortgage held

by him, James C. Paxton set up his deed, and Charles George alleged that prior to the time that the Walkers secured judgments he purchased, paid for, and went into possession of the lands claimed by him. Frank Paxton, James C. Paxton, and Charles George each denied that the transaction by which he held an interest in the lands in controversy was without consideration or tainted with fraud. The other suit was brought by Frank Paxton to foreclose a mortgage in which he was mortgagee and Anthony Paxton, Jr., and Ida Paxton were mortgagors. The mortgage covered the land which Anthony Paxton, Jr., and Ida Paxton, his wife, had conveyed to James C. Paxton and also covered land claimed by Charles George. As a defense to the suit brought by Frank Paxton, the Walkers alleged that the mortgage sought to be foreclosed was executed and delivered without consideration and for the purpose of preventing them from collecting an indebtedness owing to them by Anthony Paxton, Jr., and Ida Paxton. As a defense to the foreclosure suit, James C. Paxton alleged that, at the time he was negotiating for the purchase of the land which was later conveyed to him, Frank Paxton stated that he would release his mortgage as to such land. A similar defense was interposed by Charles George to the foreclosure suit. Upon the issues joined in the two suits, a trial was had before the court sitting without a jury. The decree from which this appeal is prosecuted directs: That the title to the lands conveyed to James C. Paxton be quieted in him free and clear of the mortgage held by Frank Paxton but subject to the judgment lien in favor of the Walkers in the sum of $194.63; that Anthony Paxton, Jr., and Ida Paxton, his wife, execute and deliver to Charles George a conveyance of the land claimed by him, which land when so conveyed is, by the decree, adjudged to be free and clear of the mortgage held by Frank Paxton and also free and clear of any and all judgment liens in favor of the Walkers; that Frank Paxton have judgment against Anthony Paxton, Jr., and Ida Paxton in the sum of $24,562.81; and that to satisfy

such judgment the mortgage held by Frank Paxton be foreclosed and the land covered by the mortgage (other than the land claimed by James C. Paxton and Charles George), be sold and that the judgments held by the Walkers against Anthony Paxton, Jr., and Ida Paxton do not constitute any lien or incumbrance upon the real estate which is subject to the mortgage held by Frank Paxton.

The McKellar Real Estate & Investment Company, Alvin M. Jensen and his wife, Emily S. Jensen, James Gardner, and Ed Van Winkle, were originally made parties to the one or the other of the two consolidated suits, but any interest that these parties may have had in the subject-matter of this controversy was satisfactorily disposed of in the court below and they are no longer interested in this litigation. No error has been assigned as to that part of the decree which quieted title in James C. Paxton to the property conveyed to him, and therefore that part of the decree is not before us for review.

On this appeal the Walkers have eleven assignments of error, all of which are bottomed upon their claim that the findings of fact made by the trial court are not supported by, but are against the clear preponderance of, the evidence.

The respondents, in their brief, attack the sufficiency of the assignments of error to invoke the jurisdiction of this court to review the evidence to ascertain whether or not the findings complained of are, as urged by the appellants, against the clear preponderance of the evidence. It is contended by respondents that the assignments do not comply with that part of rule 26 of this court which reads as follows:

"When the alleged error is upon the ground of the insufficiency of the evidence to sustain or justify the verdict or decision the particulars wherein the evidence is so insufficient shall be specified."

One of appellants' assignments, which is typical of the others, reads as follows:

"That the trial court erroneously found (Findings of Fact 1) that on the 15th day of December, 1920, for a full and adequate consideration the defendants, Anthony Paxton, Jr., and Ida Paxton, his wife, made, executed and delivered to plaintiff, Frank Paxton, their promissory note for the sum of $15,000 described in said findings; that there is no evidence, however, to support the finding that said note was executed for adequate consideration, or for any consideration whatsoever, and that said finding is clearly against the preponderance of the evidence."

Respondents contend that the assignment just quoted and the other assignments which are in substantially the same form and of like character must be held insufficient under the law announced by this court in the following cases: *Egelund* v. *Fayter*, 51 Utah 579, 172 P. 313; *Holt* v. *Great Eastern Casualty Co.*, 53 Utah 543, 173 P. 1168; *Hansen* v. *Oregon Short Line R. Co.*, 55 Utah 577, 188 P. 852; *Ferguson* v. *Robertson*, 58 Utah 46, 197 P. 225; *Wilson & Co.* v. *Guyon*, 61 Utah 565, 216 P. 1078; *Eagle Lumber Co.* v. *Burton Lumber Co.*, 62 Utah 491, 220 P. 1069; *Wright* v. *First National Bank of Beaver City*, 63 Utah 451, 226 P. 671; *Thomas* v. *Perry Irrigation Co.*, 63 Utah 490, 227 P. 268; *Ogden Savings & Trust Co.* v. *Blakely*, 66 Utah 229, 241 P. 221; *Bouwhuis* v. *Johnson*, 68 Utah 544, 251 P. 359; In re Application 7600 to Appropriate Water, 73 Utah 50, 272 P. 225; *Jordan* v. *Madsen*, 74 Utah 280, 279 P. 499. The assignments in this case are readily distinguishable from the assignments involved in the cases cited and relied upon by the respondents. It will be noted that appellants' assignments in this case specify the particulars wherein they claim the findings are against the preponderance of the evidence. Where a party seeks the review of a specific finding of a particular fact under a claim that the finding of such fact is against the preponderance of the evidence, it is not necessary under rule 26 of this court to set out in the assignment the evidence which supports and which controverts the finding so attacked. Appellants' assignments of error are sufficient to entitle them to a review of the evidence and to the judgment of this court as to whether

or not the preponderance of the evidence requires findings that the mortgage to Frank Paxton and the alleged agreement to convey to Charles George are void as against the judgments of the appellants.

The record discloses without controversy the following facts: Charles George is a brother-in-law, and Frank Paxton and James C. Paxton are brothers of Anthony Paxton, Jr. On April 27, 1920, Anthony Paxton, Jr., and Ida Paxton, his wife, entered into a written contract with the Walkers whereby the Paxtons agreed to purchase and the Walkers agreed to sell a hotel at Delta, Millard county, Utah. The contract price was $18,000. At the time the contract was entered into, $2,500 was paid down. The contract provided that $2,500 should be paid sixty days after the date of the contract, and that the remainder of the contract price should be paid in monthly installments of $200 per month. Anthony Paxton, Jr., and his wife failed to pay the $2,500 which became due under the contract on June 26, 1920, and on July 1, 1920, the Walkers began pressing the Paxtons to make their payments. In November of 1920 the Paxtons paid $800 on the contract, but made no other payments. The Paxtons having defaulted on the contract, the Walkers, in 1921, filed a suit for the enforcement of the contract. The Paxtons defended against that suit. The trial resulted in a judgment in favor of Anthony Paxton, Jr., and Ida Paxton. The Walkers appealed. On the appeal, the judgment was reversed. *McKellar Real Estate & Investment Co.* v. *Paxton,* 62 Utah 97, 218 P. 128. The opinion reversing the judgment was filed on August 16, 1923. The opinion discloses that the costs on appeal were to be equally divided between the plaintiffs and the defendants in that suit, and that the Paxtons were liable on the contract subject to any set-off that they may have because the building constructed upon the premises did not meet the requirements of the agreement of the parties. The cause was remanded to the district court of Millard county, Utah, with directions to that court to ascertain the amount of set-off to which the

Paxtons were entitled. As a result of the order of this court directing that the costs on appeal be equally divided, the Walkers were awarded one of the judgments here involved against the Paxtons, viz. the judgment in the sum of $194.-63. The retrial of that cause in the district court resulted in the other judgment here involved, viz. the judgment in the sum of $12,281.86, being entered on December 28, 1926. The Paxtons appealed to this court from that judgment. The judgment was affirmed by an opinion of this court entered on July 26, 1928. *McKellar Real Estate & Investment Co.* v. *Paxton,* 72 Utah 330, 269 P. 1035. Executions were issued and returned unsatisfied on the judgments here involved prior to the time the Walkers brought the suit in the instant case. The mortgage in favor of Frank Paxton as mortgagee and Anthony Paxton, Jr., and Ida Paxton, his wife, as mortgagors, was recorded in the office of the county recorder of Millard county, Utah, on September 5, 1923. It shows on its face that it was acknowledged by Anthony Paxton, Jr., and Ida Paxton, his wife, before Parker Robinson, a notary public. It bears date December 15, 1920.

The evidence with respect to the mortgage in favor of Frank Paxton is, in substance, as follows: Frank Paxton testified that he is the plaintiff in the foreclosure proceeding; that on December 15, 1920, he, Parker Robinson, and his brother Anthony met in the State Bank of Millard County, Utah; that at that time Anthony executed the note and mortgage sued upon; that the note in the sum of $15,000 was given as a renewal of other notes which he held against Anthony; that one of the notes which went to make up the $15,000 note was a $5,000 note which evidenced an indebtedness which arose in 1894; that prior to that year he and Anthony were copartners in the sheep and cattle business; that in 1894 they divided the copartnership livestock; that Anthony took the cattle and he took the sheep; that in making the settlement of the partnership affairs it was ascertained that Anthony owed him $5,000, for which amount he gave a note; that in 1905 he gave Anthony a draft on

B. F. Saunders for $2,000, and Anthony gave him a note for that amount; that in 1907 he loaned Anthony an additional $1,000 by giving him another draft on B. F. Saunders, and that Anthony gave him a note for that amount; that in 1899 he loaned Anthony $450 and Anthony gave him a note therefor; that each of the notes bore interest at 6 per cent per annum; that the notes were renewed from time to time, but he did not remember when they were renewed; that when the notes were renewed the interest was added to the principal; that Anthony had paid some interest on the notes, but he did not remember when any interest was paid or the amount of the interest; that he did not have any record of the money loaned to Anthony except the note and mortgage upon which his foreclosure suit was based; that at the time he gave the drafts to Anthony he was in the live stock business with B. F. Saunders; that for a time he was employed by B. F. Saunders and later he became a partner, owning a one-third interest; that B. F. Saunders is dead and all the records of his business dealings with Saunders are destroyed; that at the time the $15,000 note and mortgage were executed he gave Anthony three notes; later in his testimony he stated there were four notes; that the principal and interest on the notes which he held against Anthony amounted to about $16,000, but he agreed to accept the note in the sum of $15,000 in full settlement of his claims against Anthony; that, when Anthony paid any interest on a note, the payment was indorsed on the note, and that he kept no other record of the amount owing to him by Anthony; that he did not take a mortgage to secure any of the four notes because he thought he could trust Anthony; that at the time the $15,000 note was executed he was a director of the State Bank of Millard County, and Parker Robinson, who took the acknowledgment of the mortgage, was its cashier; that he was engaged in farming and the raising of live stock; that he, at times, employed as many as twenty men but that he did not keep any books except stubs of checks and drafts which he drew; that he

did not record the mortgage which he held against Anthony for nearly three years after it was made out because he knew he could record it at any time, although he knew he was taking chances in not recording it; that he permitted Anthony to sell some of the land covered by the mortgage to James C. Paxton and to keep all of the money derived from the sale because Anthony wanted to borrow some more money; that he also permitted Anthony to collect and keep the money which was owing by Charles George on some of the land covered by his mortgage; that he knew Anthony was doing contract work in constructing roads, and that he listed as his assets the property covered by the mortgage so that he could get bonds; that Anthony owned no property other than that covered by the mortgage; that he took the mortgage as security for what Anthony was owing because he knew Anthony was becoming involved; that one of the reasons that caused him to ask for a mortgage was the fact that Anthony was indebted for the hotel property at Delta; that he heard the Supreme Court had reversed the judgment in favor of Anthony before he recorded his mortgage; that the fact that the judgment was reversed was one of the reasons that influenced him to record his mortgage; that since the mortgage was executed he had been in possession of the grazing land covered by the mortgage and has paid the taxes thereon.

Anthony Paxton, Jr., testified in substance, that in 1920 his wife transferred all of the property which she held in Iron county, Utah; that he joined in his wife's deed of conveyance; that a suit had been commenced in Iron county to set aside the conveyance so made by him and his wife; that the attorney for Frank Paxton in this case is the attorney for him and his wife in the suit brought in Iron county; that he has lost or destroyed the notes which were returned to him when he gave his brother Frank the note and mortgage for $15,000; that in 1894 he gave his brother Frank a note for $5,000; that prior to 1894 he and his brother Frank were copartners in the sheep and cattle business; that dur-

ing that year they divided up their live stock; that Frank received 500 sheep and he received 225 head of cattle; that the first note for $5,000 represented the difference in the value of the sheep and the cattle together with money that Frank had advanced for the expenses of the copartnership; that in 1905 he gave Frank a note for $2,000 or $3,000 or it may have been for $3,500; that he received a draft for the note; that he sent the draft to Mr. Saunders' office and the money came back by registered mail; that he did not think he signed any record at the Kanosh post office for the registered mail; that he thought the money came in bills; that he did not remember whether he got the money by registered mail; that he did not put the money in the bank, but carried it in his pocket; that in 1907 he gave a third note to his brother Frank; that at the time the third note was given to Frank he received another draft for $2,000 or $3,000, or $4,000 on Saunders; that he did not remember whether or not he sent the draft to the bank at Nephi; that in 1909 he signed another note for $450 in favor of Frank for money borrowed; that he paid some interest on the notes, but did not remember the amount or date of any payment; that he kept a record of the notes and payments made in a little red-backed book; that the book was lost or destroyed; that he was mistaken when he said he got the money through the mails on the first draft; that he took the draft to Nephi, gave it to the Grace Lumber Company in payment of some lumber which he purchased; that the lumber company took out enough to pay for the lumber purchased and returned about $1,700; that he had been asked a question during the recess which caused him to remember that his brother was right as to the amount of the second draft; that since the mortgage for $15,000 was given to Frank he had sold property covered by the mortgage and had received therefrom between $2,000 and $3,000 and had kept all of the money; that Frank had consented that he keep the money; that he purchased most of the land that was covered by Frank's mortgage after he became indebted

to Frank; that he paid cash for the land so purchased; that Frank did not object to his buying land even though the interest was not paid on the notes which Frank held; that he has been engaged in contracting for the construction of roads since he gave the mortgage to Frank; that in order to secure bonds he had made property statements; that he listed as his assets the property covered by the mortgage held by Frank and made no mention of the mortgage; that he did not think Frank would object to the listing of the property without mentioning the mortgage; that he believed the listing of the property without mentioning the mortgage was honest business; that, when he and his wife, executed the note and mortgage for $15,000, he and Frank had a settlement on the amount owing upon all the notes; that he did not remember the amount owing upon any of the notes, but the total was about $16,000; that Frank consented to settle for $15,000; that all of the property he owned was covered by the mortgage; that at the time the mortgage was executed he and Frank estimated the property covered by the mortgage was worth $15,000, but it may not be worth more than $10,000; that he has paid $135 on the $15,000 note, but he did not know whether it was paid by check or by cash, but he believed it was paid in cash either at Kanosh or Delta. The record discloses that Parker Robinson, before whom as notary public the mortgage was acknowledged, was present in court during the trial, but he was not called as a witness.

The evidence with respect to the land claimed by Charles George is, in substance, as follows: Anthony Paxton, Jr., testified that in March or April, 1920, he sold 2½ acres of land with a house on it together with the water right used thereon to Charles George for the sum of $1,000 and Mr. George paid in full for the property; that the water right has been conveyed to Mr. George, but the land has not been conveyed; that he included the land which he sold to Mr. George in the mortgage to Frank Paxton because, at the time the mortgage was given to Frank, Mr. George had not

paid all of the purchase price; that Mr. George finished paying for the property during the latter part of 1920 or the first part of 1921; that Mr. George is engaged in conducting a mercantile establishment, that he purchased from Mr. George furnishings for his hotel at Delta and supplies for his men engaged in the work of constructing roads; that it was agreed between him and Mr. George that the amount owing for the furnishings and supplies should be applied on the purchase price of the land and water; that in the summer of 1920 he did have a talk with Mr. Walker in which was mentioned the land which he had sold to Charles George; that at that time George had not paid for the land and he believed that Mr. George would not object to his selling the property. Frank Paxton testified that at the time he secured his mortgage Anthony informed him that he had sold the 2½ acres to Mr. George. Charles George testified that he purchased the 2½ acres of land claimed by him from Anthony Paxton, Jr., the latter part of March or the first part of April, 1920; that he agreed to pay $1,000 therefor; that the agreement was oral; that he has paid in full for the property; that since June, 1921, he has been in possession and claimed to be the owner of the property; that his son has been living on the property, has paid all the taxes levied thereon; that he has frequently asked Anthony to give him a deed to the property, but Anthony has failed to give him a deed; that the payments to Anthony have for the most part been in merchandise sold out of his store. Emma H. Rushten testified that she was bookkeeper for Charles George in 1920 and the first part of 1921. She identified a number of accounts which showed that Anthony Paxton, Jr., had purchased merchandise at the store of Mr. George to the amount of about $900. So far as she knew, Anthony had not paid for the merchandise. W. R. Walker testified that sometime during the month of August, 1920, he had a conversation with Anthony Paxton, Jr., in which Mr. Paxton told Mr. Walker to sell the property which he owned at Kanosh; that the property concerning which the

conversation was had included the property claimed by Charles George. It is upon substantially the foregoing evidence that appellants contend that findings should be made to the effect that the mortgage to Frank Paxton and agreement to convey the 2½ acres of land to Charles George are void as against the judgment of the Walkers. The respondents contend to the contrary.

The two proceedings which are consolidated on this appeal are suits in equity, and as such the parties are entitled to a review and determination by this court of questions of fact as well as questions of law. In reaching a conclusion as to the facts, the findings made by the trial court should not be disturbed unless we are convinced that they are wrong, but, when so convinced, it becomes our duty to set them aside. It is quite generally held that a transfer or mortgage of property between near relatives which is calculated to prevent a creditor from realizing on his claim against one of such relatives is subject to rigid scrutiny. 27 C. J. 495, and cases there cited. Under the rule, a transfer or mortgage of property made to a near relative in consideration of past-due indebtedness will be sustained if attacked in a creditor's suit when, and only when, it is shown the debt is genuine, that the purpose of the grantee or mortgagee is honest, and that he acted in good faith in obtaining his title or lien. The burden, in such case, is cast upon the grantee or mortgagee to show the good faith of the transaction by clear and satisfactory evidence. *Elliott & Co.* v. *Johnson,* 85 W. Va. 706, 102 S. E. 681; *Woody* v. *Tucker, Willingham & Co.,* 215 Ala. 278, 110 So. 465; *Flint* v. *Chaloupka,* 78 Neb. 594, 111 N. W. 465, 13 L. R. A. (N. S.) 309, 126 Am. St. Rep. 639; *Jones* v. *Beers,* 118 Or. 317, 246 P. 711. Applying the rule to the mortgage made by Anthony and his wife to Frank, it cannot be said that Frank has discharged that burden. On the contrary, there are a number of facts disclosed by the evidence which tend to show that the mortgage was executed for the purpose of preventing the Walkers from collecting

the amount owing to them by Anthony and Ida Paxton. There is not a scintilla of evidence, other than the testimony of Frank and Anthony, which shows, or tends to show, that Anthony was indebted to Frank at the time the note and mortgage were executed. The notary before whom the execution of the mortgage was acknowledged was present in court during the trial; yet he was not called to testify. During more than a quarter of a century after the major part of the alleged obligation of Anthony to Frank was contracted, Anthony seems to have had unlimited credit with Frank. Frank was apparently content with the unsecured note of Anthony for a $5,000 obligation, for a period of 26 years, with an unsecured note of $2,000 for a period of fifteen years, with an unsecured note of $1,000 for a period of thirteen years, and with an unsecured note of $450 for either 21 or 11 years, depending upon whether the testimony of Frank or Anthony is believed. During that period of time the indebtedness increased from $8,450 to $16,000 by adding the accumulated interest at the rate of 6 per cent per annum to the original obligations. In the meantime Anthony seems to have been reasonably prosperous. He purchased and paid cash for much of the land involved in this litigation. Before and at the time the note and mortgage were executed, Anthony was being pressed by the Walkers for payment of money past due on the contract for the sale of the hotel at Delta. Frank apparently knew that the Walkers were pressing Anthony for payment, and that was one of the reasons why the note and mortgage for $15,000 were executed. Twenty days after it became evident, from the opinion of this court in the first case of *Mc-Kellar Real Estate & Investment Company* v. *Paxton*, supra, that Anthony must pay the Walkers for the hotel property at Delta, Frank placed his mortgage of record. It had been withheld from record after the date it bears for two years 8⅔ months. At the time he recorded his mortgage, Frank had, according to his testimony, been informed of the adverse decision against Anthony. After the mortgage was

placed of record, Anthony sold land covered by the mortgage and received in payment therefor about $2,000, although the mortgaged property was all the property Anthony owned and was insufficient to pay the indebtedness secured by the mortgage. After the mortgage was executed, Anthony, with the knowledge and acquiescence of Frank, listed the mortgaged property as belonging to him (Anthony) without any mention of Frank's mortgage. These facts all tend to support appellants' claim that the mortgage was made for the purpose of preventing them from collecting the amount of their claim against Anthony and his wife. Such facts are characterized by text-writers and adjudicated cases as badges of fraud. 27 C. J. 483 et seq., and cases cited in the footnotes. Although the transactions concerning the alleged indebtedness of Anthony to Frank extended from 1894 to the commencement of these suits in June and July, 1927, there is no documentary evidence other than the note and mortgage here involved which supports, or tends to support, the claim that Anthony was indebted to Frank. Such claim rests solely upon the testimony of Anthony and Frank. Upon this record the appellants are entitled to a finding that the mortgage given by Anthony and his wife to Frank was without consideration and that it was executed for the purpose of hindering, delaying, and preventing the Walkers from collecting the money owing to them by Anthony and his wife Ida.

We do not feel justified in interfering with the findings and decree with respect to the premises claimed by Charles George. There is evidence that Charles George went into possession of the premises claimed by him in June, 1921, that he claimed to be the owner of the premises, ■ and that he paid, or caused to be paid, all of the taxes levied thereon after he went into possession. If the facts relative to possession and the payment of taxes were not as testified to by Mr. George, it would have been an easy matter for the Walkers to have produced evidence to the contrary. The evidence is clear and convincing that An-

thony secured from Charles George furnishings for his hotel and material for his road work in an amount nearly equal to the alleged sale price of $1,000. There is evidence that Anthony has not paid for the furnishings and material purchased by him. There is no evidence that the property claimed by Charles George was worth in excess of $1,000. While the failure of Anthony to convey the property to Mr. George and the fact that Anthony offered to sell the property after the alleged parol agreement to convey was entered into, tend, in a measure, to make against the claim of Mr. George, yet, in the light of all of the evidence, and the fact that the trial court was in a better position to determine the weight that should be given the evidence than is this court, we have concluded that the finding and judgment as to the property claimed by Charles George should be affirmed. From what has been said, it follows that the findings as to the mortgage to Frank Paxton is disapproved, and the decree directing that his mortgage be foreclosed is reversed.

This cause is remanded to the district court of Millard county, Utah, with directions to that court to recast its findings and decree to conform to the views herein expressed and to enter a decree directing that the lands here involved, other than the lands conveyed to James C. Paxton and the land claimed by Charles George, be sold to satisfy the judgments held by the Walkers against Anthony Paxton, Jr., and Ida Paxton. The decree as to the land conveyed to James C. Paxton and the land claimed by Charles George is affirmed. The Walkers are awarded their costs in the court below and on this appeal against Frank Paxton, Anthony Paxton, Jr., and Ida Paxton. James C. Paxton and Charles Paxton are awarded their costs on this appeal against W. R. Walker and Josephine B. Walker.

STRAUP, FOLLAND, and EPHRAIM HANSON, JJ., concur.

CHERRY, C. J., being absent on account of illness did not participate herein.