BOCCALERO v. BEE et al. (STIMPSON, Garnishee).

No. 6454.   Decided June 18, 1942.   (126 P. 2d 1063.)

See 24 Am. Jur., 186; 26 C. J. S. Descent and Distribution, sec. 76.

*W. D. Beatie,* of Salt Lake City, and *George S. Ballif,* of Provo, for appellants.

*J. C. Halbersleben* and *M. B. Pope,* both of Provo, for respondent.

LEVERICH, District Judge.

Plaintiff in this action secured a judgment in the District Court in Utah County against the defendants, R. G. Bee and Mary C. Bee, in the amount of $3,307, plus interest at 6 per cent per annum from January 14, 1936, until paid, together with $250 attorney's fees and costs in the sum of $14.20. Judgment was entered on January 14, 1936, and thereafter, on the 6th day of April, 1940, plaintiff caused to be issued a garnishment in aid of execution, the same being served upon Edith Bee Stimpson, one of the administrators with will annexed of the estate of Robert Bee, deceased.

Robert Bee was the father of the defendant, R. G. Bee, and by virtue of the will of the deceased, R. G. Bee was to receive a one-seventh (1/7th) interest in the estate. In the answer of Edith B. Stimpson, garnishee, it is stated that the estate was not in any manner indebted to the defendant, R. G. Bee, either in property or money now due or to become due but that the interest of R. G. Bee in the estate of Robert Bee, deceased, was assigned to Alice B. Teague by written assignment about July 29, 1935, and that she (Alice B. Teague) was the owner of the interest of R. G. Bee. The plaintiff traversed the garnishee's answer and interpleaded Alice B. Teague as a party defendant. Alice B. Teague filed her claim, setting forth that R. G. Bee had, for a valuable consideration, assigned all of his interest in said estate to her on July 29, 1935; a copy of the written assignment was attached and made a part of the claim. The plaintiff, in his answer to the claim of the interpleaded defendant, denied that the assignment was made for a valuable consideration—or any consideration—and alleged that the assignment was in fraud of creditors, that it was made to the sister of R. G. Bee, and that he was insolvent at the time the assignment was made. On the issues thus framed, the trial court found that the garnishee defendant had in her custody $1,000 belonging to the defendant, Alice B. Teague, by reason of the assignment of R. G. Bee; that

there was a valuable consideration for the assignment; that
R. G. Bee, at the time of the assignment, was insolvent;
that the assignment from R. G. Bee to his sister, Alice B.
Teague, was not fraudulent as to the creditors of R. G. Bee;
and that Alice B. Teague is the owner of the interest of R.
G. Bee in the estate of Robert Bee. From these findings
and conclusions made, the court entered a judgment against
the plaintiff, from which plaintiff appeals.

Plaintiff in his brief states that the only question is
whether the findings, conclusions of law and decree are
supported by the evidence.

This matter having been tried in the District Court
as an equitable proceeding, this court will review
questions of law and questions of fact.

It is contended by plaintiff that the assignment by de-
fendant Bee to Alice B. Teague was a fraudulent convey-
ance under sections 33-1-2, 33-1-3 and 33-1-4 of the Revised
Statutes of Utah, 1933. Said sections read as follows:

Section 33-1-2.

"Fraudulent Conveyances. * * * . Insolvency.

"A person is insolvent when the present fair salable value of his
assets is less than the amount that will be required to satisfy his
probable liability on his existing debts as they become absolute and
matured."

Section 33-1-3.

"Fraudulent Conveyances. * * * Fair Consideration.

"Fair consideration is given for property, or obligation:

"(1) When in exchange for such property, or obligation, as a fair
equivalent therefor, and in good faith, property is conveyed or an an-
tecedent debt is satisfied; or

"(2) When such property, or obligation, is received in good faith
to secure a present advance or antecedent debt in amount not dispro-
portionately small when compared with the value of the property or
obligation obtained."

Section 33-1-4.

"Conveyances—By Insolvent.

"Every conveyance made, and every obligation incurred, by a person who is, or will be thereby rendered, insolvent is fraudulent as to creditors, without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration."

Plaintiff designates the following circumstances as "badges of fraud":

(1) Concealment of, or failure to file, assignment.

(2) Relationship of parties, and grantee's non-residenceship.

(3) Insolvency of assignor.

(4) Debt used as consideration barred by statute of limitations.

(5) Transfer made in anticipation of suit.

(6) Transfer not in usual course of business.

(7) False statement of consideration.

(8) Falsity by reason of excess in amount secured.

(9) Absolute conveyance as security.

Plaintiff does not contend that the "badges of fraud" in themselves constitute fraud, but that they are merely signs, or indicia, from which the existence of fraud may be properly inferred as a matter of evidence.

The defendant, R. G. Bee, was present in Court and testified, while the testimony of his sister, Alice B. Teague, was introduced into the record by means of a deposition taken February 7, 1940.

The evidence shows that at various times commencing June 14, 1923, and continuing to April 28, 1927, R. G. Bee requested money from his sister, Alice B. Teague, and that she loaned him the following amounts:

| | |
|---|---|
| June 14, 1923 | $ 723.75 |
| July 19, 1923 | 600.00 |
| March 27, 1924 | 500.00 |
| September 8, 1924 | 1,000.00 |
| September 18, 1924 | 1,500.00 |

| December 20, 1924 | 500.00 |
| January 5, 1926 | 350.00 |
| October 5, 1926 | 300.00 |
| December 27, 1926 | 300.00 |
| April 28, 1927 | 300.00 |

R. G. Bee testified to these various amounts, using some kind of a record, the nature of which was not inquired into and does not appear in this record. Bee also had an item of $45.12 in his record dated September 10, 1924, which was his share of a vacation trip but it was paid by Alice B. Teague; Mrs. Teague, however, did not consider that a loan but Bee insisted he wanted to pay it. All of the items above, except the $1,000 item of September 8, 1924, was paid to Bee by checks signed by J. E. Teague, husband of Alice B. Teague, and payable to R. G. Bee. R. G. Bee testified that "all of the checks were given to Mrs. Teague and she delivered them to me." All of the cancelled checks were produced by Alice B. Teague on February 7, 1940, and were received in evidence at the trial. The item of $1,000 of September 8, 1924, was money drawn from the savings account of Mrs. Teague at the Continental National Bank in Salt Lake City, in the form of cash or a cashier's check. On September 8, 1924, Mrs. Teague took a note from Bee in the amount of $1,000, payable six months after date to J. E. or Alice Teague, bearing interest at 6 per cent per annum, signed by R. G. Bee and his wife. This note was endorsed by J. E. Teague and produced by Alice B. Teague. The item of $1,500 (September 18, 1924) is also evidenced by a note dated September 13, 1924, in the amount of $1,500, payable on or before 6 months after date to J. E. or Allie Teague, bearing 6 per cent interest and signed by R. G. Bee and his wife. This note was also endorsed by J. E. Teague and was produced by Alice B. Teague. Bee never repaid any of the money in cash. The written assignment was delivered to Mrs. Teague on or about July 29, 1935. There is some conflict as to the means of delivery—whether by mail or personal delivery. Bee stated that it was mailed to Mrs. Teague

who was then residing in Long Beach, California, while Mrs. Teague stated that the assignment was delivered to her personally in the presence of J. E. Teague and her attorney. However, the evidence is to the effect that the Teagues were in Provo a "short time after" that date (July 29, 1935).

The assignment was given pursuant to discussions between Bee and Mr. and Mrs. Teague; one such conversation occurred just after the death of Robert Bee (February 1, 1926) at which time the Teagues desired to make some arrangement so that Bee could satisfy her (Mrs. Teague's) account. Bee did not agree at that time to the assignment but he offered the assignment on July 29, 1935.

On July 20, 1935, the plaintiff wrote to the defendants stating that he declared the note (upon which judgment was rendered in this action) due by reason of default in payment of interest. The note had been given to plaintiff, together with $9,250 in cash obtained by a first mortgage on the property. The property was later taken in consideration of this loan of $9,250.

There had been no "formal request" for payment from the Teagues for the money received by Bee, but it had been discussed a number of times. Mrs. Teague stated that she placed the assignment in the family safe at Provo and that she did not file the assignment in the Probate Court. However, when it was called to her attention, she testified that she filed the assignment with the court on June 16, 1937. A copy of the assignment was to be marked as an exhibit in this case and was to be included in the record, but this was not done. There is no dispute, however, with respect to the contents of the assignment, a copy of which is attached to the interpleaded defendant's claim. It appears from the testimony and the copy of the assignment that $3,000 was the consideration expressed in the written assignment. Bee testified that he received no money from Mrs. Teague at the time of the assignment, but that sum ($3.000) represented his one-seventh (1/7th) interest in his father's estate and that he attempted to apply his interest, which

amounted to $3,000 on Mrs. Teague's account. It is not certain whether the parties regarded the assignment as full payment or partial payment of the obligation.

Counsel for defendant in his brief admits the insolvency of R. G. Bee at the time of the assignment. Mrs. Teague had no knowledge of Bee's financial difficulties, nor of any judgment against him. The foregoing are the material facts presented for review.

The filing of the assignment in the Probate Division of the Court in Provo was not required by law, nor is it necessary. The fact that it was filed would indicate a lack of intention to conceal. The evidence is clear that Mrs. Teague had no knowledge of the financial difficulties of R. G. Bee.

Plaintiff, in support of his contention that failure to file the assignment in the Probate Court was evidence that the assignment was fraudulent, cites the case of *Paxton* v. *Paxton,* 80 Utah 540, 15 P. 2d 1051, 1056. The case at bar is distinguishable from the Paxton case in that the Paxton case involved a mortgage for which recording is provided by statute. In the Paxton case it was shown, also, that, with the consent of the mortgagee, the mortgagor had treated the property as his own. He had sold two parts and kept all of the purchase price, with the consent of the mortgagee.

The fact that R. G. Bee and Mrs. Teague are brother and sister was, of course, admitted. Mrs. Teague was a nonresident of Utah at the time the asignment was given, but was residing in Utah when the moneys were advanced to Bee. Plaintiff cites the Paxton case, supra, as follows:

"It is quite generally held that a transfer or mortgage of property between near relatives which is calculated to prevent a creditor from realizing on his claim against one of such relatives is subject to rigid scrutiny. 27 C. J. 495, and cases there cited. Under the rule, a transfer or mortgage of property made to a near relative in consideration of past-due indebtedness will be sustained if attacked in a creditor's suit when, and only when, it is shown the debt is genuine, that the purpose of the grantee or mortgagee is honest, and that he acted in good

faith in obtaining his title or lien. The burden, in such case, is cast upon the grantee or mortgagee to show the good faith of the transaction by clear and satisfactory evidence."

That there is evidence of a debt in this case is clear. Bee executed two notes payable to J. E. or Allie Teague, which notes were endorsed by J. E. Teague and in the possession of Alice Teague at the time of the hearing. Mrs. Teague also produced the cancelled checks which had been saved by the Teagues over a period of years. Mr. Bee had recorded each and every advancement made to him and testified from this unquestioned record. That defendant Bee was insolvent is not questioned. Mrs. Teague, however, had no knowledge of this fact. No doubt the debt owing by Bee to his sister, Mrs. Teague, was barred by the statute of limitations. However, such a debt may be consideration for a valid assignment. *Lund* v. *Howell*, 92 Utah 232, 67 P. 2d 215.

The assignment was executed July 29, 1935, and suit on the note commenced by service of summons October 30, 1935. Defendant Bee had received a letter dated July 20, 1935 in which he was informed that by reason of his default in payment of interest, it was declared due and that he was to "govern himself accordingly." Mrs. Teague had no knowledge of this letter, nor of the commencement of the suit. She, as assignee, acted in good faith as required by the statement above quoted from the Paxton case.

At the time of the assignment there was owing on the two notes held by Mrs. Teague the sum of $3600 which is more than the consideration expressed in the assignment. With respect to the additional loans, the evidence shows that it was considered that the money belonged to her and that Mr. Teague never did claim any interest in it. Even though the assignment be considered only as security for the loan, Mrs. Teague would be entitled from such assignment to the full amount of the stated consideration. We

believe the assignment was given for a "fair consideration" as defined by S. 33-1-3, R. S. U. 1933, quoted supra.

Plaintiff in his brief cites *Zuniga* v. *Evans,* 87 Utah 198, 48 P. 2d 513, 101 A. L. R. 532, and *Ogden State Bank* v. *Barker,* 12 Utah 13, 40 P. 765. Both cases, however, are readily distinguishable from the case at bar. In the case of *Lund* v. *Howell,* supra, the facts are more nearly similar to the facts in the instant case. The present case is stronger, in that we have here checks payable to the debtor, together with notes made by him to evidence the indebtedness and that, along with his own record. This court, in the Lund case, supra, held that the assignment was valid.

Mr. Justice Wolfe, in a concurring opinion in the case of *Stanley* v. *Stanley,* 97 Utah 520, 94 P. 2d 465, 470, stated the rule with respect to the duty of this court in reviewing evidence as follows:

"Our duty is to make an independent examination of the record. If after that we find

"(1) The preponderance of the evidence supports the trial court's findings of fact, or

"(2) If there is doubt in our minds as to where the preponderance lies, or

"(3) We think the evidence as revealed by the record may slightly preponderate against its conclusions but such preponderance may well be offset in favor of his conclusions by having seen the witnesses and been able to judge by their demeanor as to their credibility, then we will not reverse."

After a careful consideration of all of the evidence, we have reached the conclusion that the interpleaded defendant has sustained the burden of showing that the assignment was in good faith and not to hinder, delay or defraud creditors.

The judgment of the trial court is affirmed. Costs to respondents.

MOFFAT, C. J., and WOLFE, LARSON, and McDON-OUGH, Justice.

PRATT, J., on leave of absence.