John **LEACH**, Plaintiff and Respondent,

v.

Norma B. **ANDERSON** and Valley Bank and Trust Company, a corporation, Defendants and Appellants.

No. 13808.

Supreme Court of Utah.

May 29, 1975.

2. White v. Michigan Life Ins. Co., 43 Mich.App. 653, 204 N.W.2d 772; Lock v. Lock, 8 Ariz. App. 138, 444 F.2d 163.

Parker M. Nielson, Salt Lake City, for Anderson.

Irving H. Biele of Biele, Haslam & Hatch, Salt Lake City, for Bank.

James W. Beless, Wallace D. Hurd, Salt Lake City, for plaintiff and respondent.

CROCKETT, Justice:

Plaintiff John Leach, judgment creditor, brought this action against Norma Anderson, judgment debtor, and defendant Valley Bank and Trust Company, seeking to invalidate a spendthrift trust by which Norma had conveyed to Valley Bank about $465,000 in assets. Plaintiff's purpose was to reach those assets to satisfy a judgment for $13,795.67 balance on a note he had obtained against Norma Anderson in a prior suit.

Upon a plenary trial the district court made appropriate findings and determined that the trust was in reality for the benefit of its creator, Norma Anderson, and therefore as to this plaintiff creditor, was void under the provisions of Section 25–1–11, U.C.A.1953:

All deeds, gifts, conveyances, transfers or assignments, verbal or written, of goods, chattels, or things in action made in trust for the use of the person making the same shall be void as against the existing or subsequent creditors of such person.

Defendants contend: That the trust is not rendered void by that statute because it sets up interests in the property which will eventually vest in the children and grandchildren of Norma B. Anderson, wherefore she is but one of the beneficiaries, and the trust cannot properly be characterized as one solely for her use.

Norma B. Anderson is the widow and successor in ownership of Alton J. Anderson, who owned and operated Andy's Smorgasbord on Highland Drive in Salt Lake City, and some other related businesses. He died in 1967. On November 12, 1968, she executed a trust with the Valley Bank as trustee in which she transferred the bulk of her assets composed of both real and personal property, including the stock of certain family enterprises, several large denomination certificates of deposit, shares of irrigation stock, promissory notes, rental properties, and her residence, to Navalco, the nominee of the trustee Valley Bank. A financial statement of Mrs. Anderson prepared on July 6, 1968, shows those assets to have a net worth of approximately $465,000.

The terms of the trust provide, in part, that the trustee shall "pay to or for the benefit of the grantor [Norma B. Anderson] such portions of the income and principal of this trust as may be necessary" to maintain her in a reasonable standard of living; purchase a new automobile every two or three years according to her request; provide for vacations for herself and a companion selected by her; sufficient funds to maintain her home; sell it upon her request, and provide other living accommodations according to her needs; and also grants her powers and privileges

concerning the ownership of stock, and the right of approval and control in the operations of the family corporations. It further provides for distribution of the trust assets to Mrs. Anderson's children upon her death and for maintenance of each child's portion in trust for the defendant's grandchildren if any child should predecease her. The trust contains a spendthrift clause which prohibits the sale or assignment of the trust assets or interest therein by any beneficiary; and also that no payment from or share of the trust shall be liable to legal process of creditors of any beneficiary.

The prior judgment which the plaintiff John Leach is attempting to collect from defendant Norma Anderson was on a promissory note of the Angi Corporation, one of the family enterprises, managed by a son, David Anderson, on which note Norma B. Anderson had signed as a guarantor. Unable to satisfy his judgment against her personal assets, he commenced this action to pierce the trust and satisfy the judgment from assets Norma Anderson had conveyed to it.

The main aspect of the defendant's argument is that the purpose of the statute in question was to prevent a person from using a trust as a protective shield to hinder, delay or defraud one's creditors. It is urged that Norma Anderson in creating the trust had no such intent, but desired to protect the interests of herself and her other children from improvident requests by her son David Anderson. It is true that said Section 25–1–11, U.C.A.1953, is in the chapter on fraudulent conveyances. But in its language is found no requirement as to the hindering, defrauding, or delaying creditors.[1] It simply declares in clear and understandable language that property conveyed in trust "for the use of the person

making the same," i. e., the settlor, trustor, or creator thereof, shall be void against *existing* or *subsequent* creditors.

■ It is not to be supposed that that statute was intended to limit or interfere with other traditional and beneficial uses of trusts. That a trustor can deal generally with his property as he desires we have no doubt; and this includes placing it in an irrevocable trust, beyond his own power to reclaim, or to sell or alienate it; and may include a so-called "spendthrift trust" provision to safeguard against improvident dissipation thereof. But as the trust may affect third parties, the situation is different. The intent and the effect of the statute is to prevent a person from using a trust as a device by which he can retain for himself and enjoy substantially all of the advantages of ownership and at the same time place it beyond the legitimate claims of his creditors.[2]

■ The critical question in this case is whether that is what the trust agreement does for its creditor Norma B. Anderson. Whether the trust should be regarded as one created for the use and benefit of the trustor, is to be determined upon what she has a right to take under its terms during her lifetime, rather than upon what she has actually used therefrom. The fact that she has used only about $1,000 per year does not change the character of the trust. Neither is its character changed because it appears that after the trust res has fulfilled its commitment for her purposes during her lifetime, there may be a residuum that may benefit others than the grantor (her children and grandchildren).

■ Referring to her endowments under the trust agreement in the light of the law just discussed above, it will be seen that the entire trust res, income and principal, is committed to maintain Norma B. Ander-

---

1. Another section of that chapter, 25–1–8, deals with the avoidance of conveyances which are made with the "intent to delay, hinder or defraud creditors."

2. The authorities generally affirm that this may not be done, see Nelson v. California

Trust Co., 33 Cal.2d 501, 202 P.2d 1021; Greenwich Trust Co. v. Tyson, 129 Conn. 211, 27 A.2d 166; Scott on Trusts, Vol. II, Sec. 156; Bogert Trusts and Trustees (2d ed.), Sec. 223; Griswold, Spendthrift Trusts, p. 543.

son in her standard of living and adjuncts thereto. Therefore we think the trial court was justified in his determination that in essence and effect this trust is for the use and benefit of Norma B. Anderson; and that as to the plaintiff creditor, it is declared void by the statute, Section 25–1–11, U.C.A.1953.

Defendant also makes the contention that because the assets of the trust were conveyed to the trustee more than three years before the bringing of this action, and particularly that the real property was so conveyed to Navalco and the deeds recorded, this action is barred by Section 78–12–26(4), U.C.A.1953, which limits to three years actions created by a statute. The trial court correctly rejected this contention as without merit.

These observations are pertinent: No statute of limitation runs against any cause of action until that cause of action comes into being. The plaintiff had no cause of action to attack this trust until he attempted to enforce his judgment and the trust was asserted against him as an impediment to collecting it. While this case does not involve fraud per se, the situation is analogous; and the same principle applies: that as to a cause of action based on fraud, the statute of limitations does not begin to run until the fraud is discovered.[3] The recording of the deeds to Navalco would give plaintiff constructive notice only of those conveyances, but would put him on notice of nothing concerning this trust.[4]

Defendants also make the argument that the statute under scrutiny covers only personal property and therefore could not affect the part of the trust that consists of real property. The statute is but a codification of the common law, which for reasons discussed herein, refused to give recognition to trusts of this character involving any kind of property.[5] However, the evidence here is that there is very substantial personal property, including stock in the Anderson Enterprises, valued at $145,000. Accordingly, no useful purpose would be served by our being concerned as to whether the real property may be subjected to plaintiff's judgment.

The judgment is affirmed. Costs to plaintiff (respondent).

HENRIOD, C. J., and ELLETT, TUCKETT and MAUGHAN, JJ., concur.

---

3. Sec. 78–12–26(3), U.C.A.1953; Madsen v. Madsen, 72 Utah 96, 269 P. 132.

4. Thus different from Smith v. Edwards, 81 Utah 244, 17 P.2d 264, relied on by plaintiff. That case dealt with the statute of limitations on fraud, now Sec. 78–12–26(3), U.C.A. 1953. But there no interest was retained in the grantor through a trust.

5. That a spendthrift trust for the benefit of the grantor himself is uniformly held entirely invalid and that creditors can reach the trust property, see authorities footnote 2 above; 37 Am.Jur.2d 720; 89 C.J.S. Trusts 745; 93 A.L.R. 1211. But cf. Geary v. Cain, 79 Utah 268, 9 P.2d 396.