**TERRITORIAL SAVINGS & LOAN ASSOCIATION, Plaintiff and Appellant,**

v.

**John N. BAIRD, aka John Nelson Baird; Joy K. Baird; and John Knapp Baird, Trustee of the KOA Irrevocable Trust, Defendants and Respondents.**

No. 890275–CA.

Court of Appeals of Utah.

Sept. 26, 1989.

Merrill F. Nelson, Salt Lake City, for plaintiff and appellant.

Randall Feil and Michael Ferrin, Salt Lake City, for John Knapp Baird.

John Knapp Baird and Mark J. Morrise, Salt Lake City, for John N. Baird and Joy K. Baird.

Before BILLINGS, GARFF and GREENWOOD, JJ.

## OPINION

BILLINGS, Judge:

This appeal arises from a garnishment proceeding filed by appellant Territorial Savings & Loan Association ("TSL") to enforce a deficiency judgment against respondent John N. Baird. The parties cross-motioned for summary judgment. The trial court granted Baird's motion and denied TSL's motion. TSL appeals from this order, claiming the trial court erred in concluding as a matter of law, that Baird's conveyance of real estate into an irrevocable trust was not void under various provisions of the Utah Fraudulent Conveyances Act.[1] We affirm in part, and reverse and remand in part.

## FACTS

Since this case was disposed of on a motion for summary judgment, we review the facts and inferences reasonably drawn therefrom in the light most favorable to TSL. See, e.g., Hardy v. Prudential Ins. Co. of Amer., 763 P.2d 761, 763 (Utah 1988); Guardian State Bank v. Humpherys, 762 P.2d 1084, 1086 (Utah 1988). In May 1983, TSL loaned $325,000 to John Baird and his wife. The loan was secured by a second mortgage on the Bairds' Hawaii residence. The Bairds defaulted on the loan in September 1984. TSL completed foreclosure proceedings, applied the sale proceeds to pay the first mortgage and foreclosure expenses, and obtained a deficiency judgment against Baird in the amount of $237,174.79 in June 1986.

On June 22, 1984, approximately two months before the Bairds defaulted on the TSL loan, Baird created the KOA Irrevocable Trust ("trust"), and designated his son, John Knapp Baird, as trustee. Baird conveyed one of his only remaining valuable assets, the Meadowview Convalescent

---

1. Utah Code Ann. §§ 25–1–1 to 25–1–16 (1984) (repealed by 1988 Utah Laws, ch. 59, § 16). For current comparable provisions, see Utah Code Ann. §§ 25–6–1 to 25–6–13 (1988), Utah's Fraudulent Transfer Act. All references to the Fraudulent Conveyances Act throughout this opinion are to the 1987 version, as amended.

Center ("Meadowview"),[2] to the trust. At the time of the conveyance, Meadowview was valued at approximately $1.7 million but was encumbered by $1.2 million in mortgage debt. Meadowview was operated by an independent lessee under a ten-year lease. The lessee paid Baird monthly payments in excess of $16,000. The leasehold was also conveyed to the trust.

Contemporaneously with creating the trust, Baird directed the trustee to issue $166,000 in promissory notes from the trust to Baird, his wife, and his children.

In exchange for the property and lease agreement, the trust assumed the following obligations:

1. Mortgages on Meadowview $1,225,000.00
2. Notes to non-family creditors 245,467.93
3. Notes to family creditors 136,250.00
4. Note payable to Baird 30,000.00
 TOTAL (excluding interest) $1,636,717.93

Two of the notes to non-family creditors were also apparently executed contemporaneously with the creation of the trust. The notes to Baird's family and non-family creditors allegedly represented antecedent debts and past services performed. The trust has paid approximately $28,000 to Baird personally, and $12,000 to his wife and children since the trust was created. No payments have been made to the non-family creditors.

Although the property was conveyed to the trust in 1984, Meadowview continued to make lease payments to Baird directly until 1986. Moreover, Baird has made personal payments on several of the obligations purportedly assumed by the trust. The trustee has maintained no record of these payments or of the trust's resulting obligations to Baird.[3] The trust has never filed a state or federal income tax return.

After TSL obtained the Hawaii deficiency judgment against the Bairds, it conducted a search for the Bairds' assets but found none sufficient to satisfy its judgment other than Meadowview and the related lease. Accordingly, TSL filed its deficiency judgment in Salt Lake County, and served a writ of garnishment on the nursing facility lessee to garnish the lease payments owed by the lessee to Baird. The lessee answered that Baird's interest in the lease had been assigned to the KOA Trust. TSL then served a writ of garnishment on the trustee to garnish the lease payments and any other sums owed by the trust to Baird. The trustee answered that the trust owed Baird only $2,000. TSL commenced these proceedings by filing a reply to the trustee's answer alleging that Baird's conveyance of the nursing facility and lease into the trust was void under several provisions of the Utah Fraudulent Conveyances Act.

Following extensive discovery, both TSL and the trustee moved for summary judgment. The district court denied TSL's motion and granted the trustee's motion. TSL appeals from this order, claiming the district court erred in concluding as a matter of law, (1) that the conveyance was not void under Utah Code Ann. § 25–1–11; and (2) that there are no genuine issues of material fact concerning whether the conveyance was constructively fraudulent under Utah Code Ann. § 25–1–4, or actually fraudulent under Utah Code Ann. §§ 25–1–7, 25–1–8; and that (3) the district court erred in imposing a clear and convincing standard of proof under Utah Code Ann. § 25–1–11, and in failing to properly apportion the parties' respective burdens of proof.

## MOTION TO SUPPLEMENT THE RECORD

■ Prior to oral argument, TSL moved to supplement the record claiming it had inadvertently failed to include John Baird's deposition in the record filed on appeal. Baird responded that not only had TSL failed to file the deposition on appeal, but that TSL also did not file it with the trial court in conjunction with TSL's motion for summary judgment. Thus, the trial court did not have John Baird's deposition before it when it granted the trustee sum-

---

2. This facility is presently operating as the Glenwood Convalescent Center.

3. One provision in the trust agreement expressly provides that the trust was to reimburse Baird for any payments he made on the obligations assumed by the trust.

mary judgment. Evidence not available to the trial judge cannot be added to the record on appeal, *Conder v. A.L. Williams & Assocs., Inc.*, 739 P.2d 634, 635–36 (Utah Ct.App.1987), and thus we deny TSL's motion to supplement. Accordingly, we consider only facts properly before the trial court, notwithstanding that both parties to this action repeatedly cite to Baird's deposition in their appellate briefs.

## STANDARD OF REVIEW

■■■ Summary judgment is appropriate only if the undisputed material facts before the trial court demonstrate that the moving party is entitled to judgment as a matter of law. *See, e.g.,* Utah R.Civ.P. 56(c); *Guardian State Bank v. Humpherys*, 762 P.2d 1084, 1086 (Utah 1988). In reviewing a summary judgment, we afford no deference to a trial court's conclusions of law but review them for correctness. *See, e.g., Madsen v. Borthick*, 769 P.2d 245, 247 (Utah 1988).

■■■ In granting summary judgment, a trial court must not weigh or resolve [4] disputed evidence. *See, e.g., Hardy v. Prudential Ins. Co. of Amer.*, 763 P.2d 761, 765 (Utah 1988); *W.M. Barnes Co. v. Sohio Natural Resources Co.*, 627 P.2d 56, 59 (Utah 1981). "[T]he sole inquiry to be determined [by the trial court] is whether there is a material issue of fact to be decided." [5] Furthermore, "[c]ross-motions for summary judgment do not *ipso facto* dissipate factual issues, even though both parties contend for the purposes of their motions that they are entitled to prevail because there are no material issues of

fact." *Amjacs Interwest, Inc. v. Design Assocs.*, 635 P.2d 53, 55 (Utah 1981).

With the foregoing principles in mind, we review TSL's claim that there are material issues of fact concerning whether the conveyance into the trust was void under the Utah Fraudulent Conveyances Act.

### Trust For Grantor Void—Utah Code Ann. § 25–1–11

■■■ We first address whether the trial court correctly concluded, as a matter of law, that the conveyance was not void under Utah Code Ann. § 25–1–11. Section 25–1–11 provides, with our emphasis:

> All deeds, gifts, conveyances, transfers or assignments, verbal or written, of goods, chattels, or things in action made in trust *for the use of* the person making the same shall be void as against the existing or subsequent creditors of such person.

There are no reported Utah decisions defining the term "for the use of" as it appears in § 25–1–11. However, the Utah Supreme Court has declared that the underlying purpose of § 25–1–11 is to prevent debtors from using trusts as a device to place their property beyond the reach of their creditors' just claims, while simultaneously retaining and enjoying virtually all the advantages of ownership. *See Leach v. Anderson*, 535 P.2d 1241, 1243 (Utah 1975). The relevant inquiry for purposes of § 25–1–11 is not how much the grantor actually receives from the trust, but "what [he or] she has a right to take under its terms during [his or] her lifetime...." *Id.* In *Leach*, the grantor created a spendthrift trust and by the express terms of the trust

---

**4.** *See Madsen v. Borthick*, 769 P.2d 245, 247 (Utah 1988), wherein the court wrote, "[w]e note at the outset that a challenge to a summary judgment presents for review conclusions of law only because, by definition, summary judgments do not resolve factual disputes."

**5.** *W.M. Barnes*, 627 P.2d at 59. The trial court's summary judgment order stated, with our emphasis, *"[TSL] has a burden of supporting its contentions by clear and convincing evidence (burden) and the established facts show that [TSL] is unable to do so...."*

If the trial court had relied on the foregoing statement for the purpose of concluding that

TSL was *not* entitled to summary judgment on its claims, the statements concerning burden of persuasion were appropriate. However, in reviewing the trial court's entire order, it appears that the trial judge improperly relied on the proposition as the basis for granting *Baird's* motion for summary judgment. This was error, as it is well settled that a party *opposing* a motion for summary judgment need not "prove" its theory or theories, but rather it need only establish facts that "create a genuine issue of material fact." *See, e.g., Salt Lake City Corp. v. James Constructors, Inc.*, 761 P.2d 42, 47 (Utah Ct.App.1988).

provided, among other things, that it would:

1. "pay to or for the benefit of the grantor" the necessary income to maintain the grantor's reasonable standard of living and to maintain her home;

2. purchase a new car every two or three years at the grantor's request; and

3. provide the necessary income for the grantor and a companion to vacation....

*Id.* at 1242. The terms of the trust in *Leach* also permitted the grantor to direct and control the operation of the trust assets. The trust in *Leach* clearly transgressed the provisions of § 25–1–11, as the Utah court aptly noted, "the entire trust res, income and principal, [was] committed to maintain [the grantor] in her standard of living and adjuncts thereto." *Id.* at 1243–44.

Similarly, other jurisdictions considering analogous, if not identical, statutes invalidating a trust created for the use and benefit of the grantor have stated that the primary focus is whether the grantor has effectively insulated his or her assets against creditors' lawful claims, while retaining all the advantages of ownership.[6] Moreover, in all of the cases considered, it was clear that the grantor retained significant control over the trust assets and, in most, reserved the right to the trust income over the grantor's lifetime, while simultaneously insulating the income from his or her creditors.

TSL contends it is entitled to summary judgment on its claim under § 25–1–11 because there are no genuine issues of material fact concerning the use and benefits reserved by Baird under the trust, claiming: 1) The trust assumed Baird's liability for the first and second mortgages on the nursing facility; 2) the trust assumed Baird's liability on purported debts owed to Baird's family and friends; 3) the trust executed a $30,000 promissory note payable to Baird, of which $28,000 has been

paid; 4) Baird is entitled to cash reimbursements from the trust for all payments he makes on the debts to family and friends, a potential benefit in excess of $500,000; and 5) Baird is relieved from paying the debts to all creditors not listed in the trust agreement because, having safely conveyed away his last valuable asset, he is now judgment and collection proof.

Baird, on the other hand, asserts the trial court properly dismissed TSL's claim under § 25–1–11 because these facts do not establish that Baird retained the type of benefits contemplated by the statute. We agree.

Unlike the trust invalidated in *Leach,* Baird has not reserved any power of revocation or control over the trust. The express terms of the trust divest Baird of ownership and control over Meadowview and its income, and give full ownership and control to the trustee. The trustee has no authority to pay Baird trust income for his personal needs. When all the debts are satisfied, the trustee is obligated to distribute the income only to Baird's children. It is true that Baird received a $30,000 note in exchange for conveying the property to the trust. However, the $30,000 was not insulated from his creditors. Had the garnishment been in place at the time of the exchange, TSL would have been entitled to the proceeds paid to Baird. Any compensation Baird is entitled to in the future to reimburse him for payments to his creditors, is similarly subject to his creditor's lawful claims.

Thus, we agree with Baird that the "benefits" alleged by TSL do not constitute the type of reserved interests contemplated and prohibited by the statute. Accordingly, we hold there are no genuine issues of material fact concerning whether the benefits retained by Baird under the trust agreement were for his use and benefit and affirm the trial court's summary judgment dismissing TSL's claim under § 25–1–11.[7]

---

6. *See, e.g., Arizona Bank v. Morris,* 6 Ariz.App. 566, 435 P.2d 73, 74 (1967), *modified,* 7 Ariz. App. 107, 436 P.2d 499 (1968); *In re Camm's Estate,* 76 Cal.App.2d 104, 172 P.2d 547, 551 (1946); *Herd v. Chambers,* 158 Kan. 614, 149 P.2d 583, 589 (1944). *See also Gross v. Douglass*

State Bank, 261 F.Supp. 1002, 1006 (D.Kan. 1965); *Morton v. Morton,* 394 Pa. 402, 147 A.2d 150, 151–52 (1959); *Glass v. Carpenter,* 330 S.W.2d 530, 533–34 (Tex.Civ.App.1959).

7. As one of its principal arguments on appeal, TSL claims the trial court incorrectly imposed a

### Constructive Fraud—Utah Code Ann. § 25-1-4

We next address TSL's claim that there are genuine issues of material fact concerning whether Baird's conveyance was constructively fraudulent under Utah Code Ann. § 25-1-4. Section 25-1-4 provides:

> Every conveyance made, and every obligation incurred, by a person who is, or will be thereby rendered, insolvent is fraudulent as to creditors, without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration.

▉ To prevail under this section, TSL bears the burden of demonstrating by clear and convincing evidence [8] that 1) TSL was a creditor, 2) Baird was insolvent or rendered insolvent by the conveyance, and 3) the conveyance was made without fair consideration. *See, e.g., Furniture Mfrs. Sales, Inc. v. Deamer*, 680 P.2d 398, 399 (Utah 1984); *Meyer v. General Amer. Corp.*, 569 P.2d 1094, 1096 (Utah 1977). If the undisputed facts clearly demonstrate that TSL could not, under any circumstances, meet one of the foregoing elements, the trial court's summary judgment dismissing the constructive fraud claim was proper.

#### 1. Creditor Status

▉ For purposes of the Utah Fraudulent Conveyances Act, a creditor is defined as "a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." Utah Code Ann. § 25-1-1. It is undisputed that on May 27, 1983, Baird executed a promissory note to TSL evidencing a loan of $325,000. TSL foreclosed on the loan and obtained a deficiency judgment in excess of $237,000. Based on the foregoing, we find as a matter of law, TSL was a creditor within the meaning of § 25-1-1 at the time of the conveyance. *Cf. Furniture Manufacturers*, 680 P.2d at 399; *Meyer*, 569 P.2d at 1096.

#### 2. Insolvency

▉ The Utah Fraudulent Conveyances Act defines insolvency as follows:

> A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to satisfy his probable liability on his existing debts as they become absolute and matured.

Utah Code Ann. § 25-1-2. In *Meyer*, the Utah Supreme Court construed § 25-1-2 and stated:

> The level of insolvency necessary to meet the statute requirement is not insolvency in the bankruptcy sense but merely a showing that the party's assets are not sufficient to meet liabilities as they become due.

569 P.2d at 1096. *See also Furniture Manufacturers*, 680 P.2d at 400 n. 10 (insolvency is established by showing a negative net worth).

TSL claims, and we agree, there are significant material issues of fact concerning whether Baird was insolvent either before or after he transferred the property into the trust. Baird claimed, in his affidavit filed in support of his motion for summary judgment, that he had a positive net worth

---

clear and convincing standard of proof under § 25-1-11. We agree that the appropriate burden under § 25-1-11 is preponderance of the evidence. *Leach*, 535 P.2d at 1243. However, since we find that the trust was not for Baird's use and benefit as contemplated by the statute, we find the trial court's error harmless.

**8.** As discussed earlier, one of TSL's arguments on appeal is that the trial court erred in apportioning the parties' respective burdens of proof. TSL claims that under § 25-1-4, the initial burden of proof lies with the moving party to make a prima facie showing of (1) creditor status, (2) insolvency, and (3) lack of consideration. TSL argues that once this is done, the defendant then has the *burden* of going forward with evidence to rebut the moving party's evidence. TSL mistakenly relies on *Brimhall v. Grow*, 25 Utah 2d 298, 480 P.2d 731, 734 (1971), which involved § 25-1-8. However, we concede there is some confusion in Utah authority concerning the applicable burdens of proof. For a full discussion, *see In re Grooms*, 13 B.R. 376, 377-84 (D.Utah 1981). Nonetheless, we find that the more recent decisions clearly state that a creditor must prove all three elements by clear and convincing evidence. *See, e.g., Furniture Mfrs. Sales, Inc. v. Deamer*, 680 P.2d 398, 399 (Utah 1984); *Nelson v. Nelson*, 30 Utah 2d 80, 513 P.2d 1011, 1013 (1973).

of over $1 million both before and after the date of the conveyance. However, TSL submitted comprehensive expert testimony asserting that Baird had overstated his assets and understated his liabilities. One of the most significant asset discrepancies is a speculative mining venture that Baird invested in as a tax shelter. Baird claimed the investment was worth over $1 million. TSL produced an affidavit from the chief geologist at the mine attesting that the incidence of gold in the mine was insignificant, and that extractions could not possibly be profitable. Accordingly, TSL claims the mine was worth nothing.[9]

Based on the foregoing, we find there are factual disputes as to Baird's solvency.

### 3. Fair Consideration

█ Section 25–1–3 defines the "fair consideration" necessary to avoid a finding of constructive fraud under § 25–1–4 as follows:

Fair consideration is given for property, or obligation:

1) when in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied....

Thus, under the statute, fair consideration requires *both* a fair equivalent exchange and that the conveyance was made in good faith. *See also Meyer v. General Amer. Corp.*, 569 P.2d 1094, 1096 (Utah 1977). Presented another way, TSL can demonstrate that the conveyance lacked fair consideration if either, 1) a fair equivalent was not exchanged, or 2) the conveyance was not made in good faith.[10] We conclude there are material issues of fact concerning both elements.

### a. Fair Equivalent

Fair equivalent means " 'such a price as a capable and diligent businessman could presently obtain for the property after conferring with those accustomed to buy such property.' " *Meyer*, 569 P.2d at 1097 (quoting *Utah Assets Corp. v. Dooley Bros. Ass'n*, 92 Utah 577, 70 P.2d 738, 742 (1937)). Fair equivalent does not mean "exact equivalent" but rather the statute requires only that the consideration be fair. *Utah Assets*, 70 P.2d at 741 ("The qualifying term here is 'fair' and implies some modification of the term 'equivalent.' ").

As noted earlier in this opinion, the trust assumed approximately $1.2 million in mortgage debt and $400,000 in unsecured antecedent debt in exchange for property valued at approximately $1.7 million. The trial court concluded that the foregoing constituted fair consideration as a matter of law, stating:

The documents on file herein show that there is no genuine issue concerning the fact that the KOA Irrevocable Trust gave, and John N. Baird received, a full and fair consideration in exchange for the real property transferred into the Trust.

TSL claims that the agreement by the trustee to pay off the encumbrances on the property is not regarded as valuable consideration as against Baird's creditors. Additionally, TSL argues there are material factual issues concerning whether the debts assumed by the trust were bona fide. We address each of these arguments separately.

█ As a general proposition, the assumption of mortgage debt in exchange for the conveyance of property constitutes a fair equivalent "where the value of the

---

**9.** In addition to the conflicting evidence concerning Baird's net worth, Baird candidly admits in his brief that there are issues of fact "left unresolved with respect to ... Baird's insolvency."

**10.** *See also, e.g., United States v. Gleneagles Inv. Co.*, 565 F.Supp. 556, 574 (D.Pa.1983) (initial question of fair consideration determination is whether the transaction was made in good faith, second question is whether it was exchanged for

a fair equivalent); *Neal v. Clark*, 75 Ariz. 91, 251 P.2d 903, 906 (1952) (determining what constitutes "fair consideration" involves more than considering only the price received); *Smith v. Whitman*, 39 N.J. 397, 189 A.2d 15, 20 (1963) (there can be no fair consideration in the absence of good faith); *Sparkman & McLean Co. v. Derber*, 4 Wash.App. 341, 481 P.2d 585, 589–91 (1971) (good faith is separate element of the fair consideration requirement).

land and the amount of the mortgage are substantially equal." [11] However, in cases where the value of the property conveyed exceeds the amount of its encumbrances, a creditor may challenge the conveyance for want of adequate consideration due to the disparity. *See, e.g., Peterson v. Wilson*, 88 Cal.App.2d 617, 199 P.2d 757, 763 (1948).

Disparity between the amount of the mortgage and the value of the property is a factor which will arouse the suspicion of the court ... and where the disparity is so great as to be inequitable it will be set aside. How great the disparity must be to accomplish this result it is difficult to state, the question being one of degree.[12]

It is undisputed that at the time of the conveyance, Baird's equity in the nursing facility was worth approximately $500,000. Accordingly, the very narrow issue presented on appeal is whether the trial court correctly concluded that the antecedent debts assumed by the trust constituted the fair equivalent for Baird's $500,000 equity in Meadowview as a matter of law.

Both parties agree that the trust's assumption of Baird's antecedent debts constituted *valuable* consideration for the conveyance of Meadowview so long as the debts were genuine and bona fide.[13] However, Baird claims TSL did not challenge the bona fide nature of the debts in the proceedings below, and is, therefore, precluded from challenging them on appeal.

Conversely, TSL claims its memorandum opposing the trustee's motion for summary judgment cited portions of the record raising an issue of fact concerning whether the debts were bona fide. After reviewing TSL's memorandum and those portions of the record referred to therein, we are persuaded, although it was a very close call, that TSL sufficiently disputed the legitimacy of the antecedent debts assumed by the

trust in the proceedings below. The memorandum alleges, among other things, that the notes to the family creditors were executed contemporaneously with the creation of the trust, and prior to that time, there was no documentation of the claimed family debts and services; all monies from the trust have gone to Baird and his family creditors, and non-family creditors have received no payments; and although Baird is authorized to receive reimbursement from the trust for payments he makes on the non-mortgage debts, the trustee keeps no record of those payments or the resulting obligation to Baird. In fact, the trustee testified that he has no idea how much is owing on the various obligations. The record also indicates that several of the non-family notes were also executed contemporaneously with the creation of the trust.

■ Not only do we find that TSL sufficiently raised the issue, but based on the foregoing, we also conclude that TSL's allegations demonstrate that there are material issues of fact concerning whether the debts assumed by the trust were genuine and bona fide. *Cf. Zuniga v. Evans*, 87 Utah 198, 48 P.2d 513, 518–20 (1935); *Paxton v. Paxton*, 80 Utah 540, 15 P.2d 1051, 1056 (1932). Accordingly, we hold the trial court erred in concluding the debts assumed by the trust were bona fide and thus a fair equivalent as a matter of law.

■ In the alternative, Baird claims even if the antecedent debts are not considered toward the purchase price, the mortgages alone equal eighty percent of the value of the nursing facility and constitute a fair equivalent as a matter of law. We are not persuaded by Baird's argument. Baird conveyed $500,000 in excess equity to the trust and we are not prepared to declare that an exchange of $1.2 million in mortgage debt for property valued at

---

11. 37 Am.Jur.2d *Fraudulent Conveyances* § 22 (1968). *See also* Annotation, *Assumption of Mortgage as Consideration for Conveyance Attacked as in Fraud of Creditors*, 6 A.L.R.2d 270, 272 (1949).

12. Annotation, *supra* note 9, at 274.

13. *See, e.g., Boccalero v. Bee*, 102 Utah 12, 126 P.2d 1063, 1067 (1942); *Matusik v. Large*, 85 Nev. 202, 452 P.2d 457, 460 (1969). *See generally Givan v. Lambeth*, 10 Utah 2d 287, 351 P.2d 959, 963 (1960); *Paxton v. Paxton*, 80 Utah 540, 15 P.2d 1051, 1056 (1932).

$1.7 million is a fair equivalent as a matter of law. Ordinarily, fairness is an issue of fact and should be resolved only after the fact finder has had the opportunity to hear testimony and review the evidence.[14]

### b. Good Faith

■■■ As we discussed earlier, under Utah Code Ann. § 25–1–3, fair consideration requires both a fair equivalent, and a good faith conveyance. We find there are also genuine issues of fact concerning whether the good faith element was satisfied.

Although the Utah Fraudulent Conveyances Act does not define "good faith," the term is defined elsewhere in the Utah Code as "honesty in fact in the conduct or transaction concerned." Utah Code Ann. § 7OA–1–201(19) (1989) (Utah Uniform Commercial Code). In the context of fraudulent conveyances, other courts considering whether a conveyance was made in good faith, have examined the subjective beliefs and intentions of both the transferor and transferee concerning the propriety of the activities, and their knowledge that the result would take unconscionable advantage of others.[15]

TSL asserted multiple facts that could support a finding that the transfer lacked good faith. For instance, TSL claims Baird conveyed his only valuable asset into a trust controlled by his son,[16] both Baird and his son ignored the trust for several years, the trustee has kept no records of Baird's payments to secured and unsecured creditors, and the trust was insolvent from its inception. Moreover, there is evidence in the record that Baird's son knew of pending litigation and of Baird's financial difficulties at the time of the conveyance.

As TSL notes in its reply brief,
[R]espondents cover seven pages of their brief attempting to refute all the indicia of bad faith present in this case. The attempt merely illustrates and confirms the sharp differences in how reasonable persons may view the same evidence. Clearly, the issue of good faith is both material and disputed.

In sum, what constitutes good faith or fair equivalent under the fair consideration requirement is not susceptible to a bright-line test. Rather, it involves a subjective interpretation of all of the surrounding circumstances. Such an endeavor renders a fair consideration determination generally a jury question. Accordingly, we find there are genuine issues of material fact as to whether the conveyance was constructively fraudulent under Utah Code Ann. § 25–1–4, and thus reverse the trial court's order in this respect.

### Actual Fraud—Utah Code Ann. §§ 25–1–7, 25–1–8

■■■ As a preliminary matter, Baird claims TSL did not raise this theory below, and therefore cannot now raise the actual fraud theory on appeal. TSL, on the other hand, claims its reply to the answer of garnishee, John Knapp Baird, specifically alleged that the conveyance of the nursing facility to the trust "was a fraudulent conveyance and voided by the Utah Fraudulent Conveyances Act—Utah Code Ann. §§ 25–1–1 *et seq.*" without limitation as to particular sections within the Act. Furthermore, TSL moved for summary judgment "on all issues raised in its reply."

---

**14.** *See, e.g., Kielb v. Johnson,* 23 N.J. 60, 127 A.2d 561, 564 (1956) (fairness is a question of fact). We emphasize that whether a fair equivalent was exchanged is *ordinarily* a factual determination. There may be, on occasion, instances where it is clear that a fair equivalent was exchanged. However, this case is not such an occasion.

**15.** *See generally In re Independent Clearing House Co.,* 77 B.R. 843, 868 (D.Utah 1987); *United States v. Gleneagles Inv. Co.,* 565 F.Supp. 556, 574 (D.Pa.1983); *Smith v. Whitman,* 39 N.J. 397, 189 A.2d 15, 20 (1963). *See also* Comment, *Good Faith and Fraudulent Conveyances,* 97 Harv.L.Rev. 495 (1983).

**16.** Although transactions between family members do not, by themselves, render a transaction fraudulent, Utah courts, nonetheless, have often declared that the transactions must be closely scrutinized. *See, e.g., Ned J. Bowman Co. v. White,* 13 Utah 2d 173, 369 P.2d 962, 963 (1962); *Givan v. Lambeth,* 10 Utah 2d 287, 351 P.2d 959, 962 (1960); *Paxton v. Paxton,* 80 Utah 540, 15 P.2d 1051, 1056 (1932).

The trial court's summary judgment order provides in relevant part:

Plaintiff claimed that the conveyance was in violation of the Utah Fraudulent Conveyances Act in that allegedly:

....

Various badges of fraud existed in connection with the trust and the conveyance into trust;

The conveyance into trust was actually fraudulent (intentionally)....

The trial court's summary judgment order concluded:

The established facts fail to establish the necessary elements of the claims that the subject transfer into trust was fraudulent.

Accordingly, based on the record before us, we conclude TSL's actual fraud claim was raised below, and therefore adequately preserved for this appeal.[17]

Addressing the merits of TSL's claim, Utah Code Ann. § 25–1–7 provides:

Every conveyance made, and every obligation incurred, with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors is fraudulent as to both present and future creditors.

Similarly, § 25–1–8 provides:

Every conveyance or assignment, in writing or otherwise, of any estate or interest in lands, ... or of rents or profits issuing therefrom, ... made with the intent to delay, hinder or defraud creditors, or other persons, of their lawful suits,·damages, forfeitures, debts or demands, ... shall be void.

 Actual fraud is never presumed, but instead must be established by clear and convincing evidence.[18] Fraudulent intent is ordinarily considered a question of fact,[19] and "may be inferred from the presence of certain indicia of fraud or 'badges of fraud.' "[20]

"[Badges of fraud] are said to be facts which throw suspicion on a transaction, and which call for an explanation.... More simply stated, they are signs or marks of fraud. They do not of themselves or per se constitute fraud, but they are facts having a tendency to show the existence of fraud, although their value as evidence is relative not absolute. They are not usually conclusive proof; they are open to explanation. They may be almost conclusive, or they may furnish merely a reasonable inference of fraud, according to the weight to which they may be entitled from their intrinsic character and the special circumstances attending the case. Often a single one of them may establish and stamp a transaction as fraudulent...."[21]

17. *Cf. Clark v. Second Circuit Court,* 741 P.2d 956, 957 (Utah 1987) (issues deemed tried by consent of the parties); *Industrial Indemnity Co. v. Wick Constr. Co.,* 680 P.2d 1100, 1103 n. 1 (Alaska 1984) (findings and conclusions demonstrate the issues were litigated); *Quillin v. Hesston Corp.,* 230 Kan. 591, 640 P.2d 1195, 1196 (1982) (issue was considered by trial court even though not specifically raised by the parties).

18. *See Jensen v. Eames,* 30 Utah 2d 423, 519 P.2d 236, 239 (1974); *In re Grooms,* 13 B.R. 376, 379–83 (D.Utah 1981). *See also Koch Eng'g Co. v. Faulconer,* 239 Kan. 101, 716 P.2d 180, 185 (1986). Once again, as one of its principal arguments on appeal, TSL contends that the trial court improperly allocated the parties' respective burdens of proof. TSL claims that a plaintiff may create a presumption of fraudulent intent by establishing the presence of badges of fraud. Once this occurs, TSL asserts that the defendant then bears the burden of proof to rebut such a presumption. Although it is arguably a matter of semantics, we find the more accurate terminology is that once a plaintiff establishes by circumstantial evidence or otherwise, an inference that the defendant harbored actual intent to defraud, the burden of coming *forward* with rebuttal evidence, not the burden of *proof,* shifts to the defendant. *Compare Koch,* 716 P.2d at 186, *with In re Grooms,* 13 B.R. at 383.

19. *See, e.g., Gabaig v. Gabaig,* 717 P.2d 835, 838 (Alaska 1986); *Gifford–Hill & Co. v. Stoller,* 221 Neb. 757, 380 N.W.2d 625, 630 (1986) (provided by statute).

20. *Dahnken Inc. of Salt Lake City v. Wilmarth,* 726 P.2d 420, 423 (Utah 1986) (quoting *Givan v. Lambeth,* 10 Utah 2d 287, 351 P.2d 959, 962 (1960)). *See also Boccalero v. Bee,* 102 Utah 12, 126 P.2d 1063, 1065 (1942).

21. *Montana Nat'l Bank v. Michels,* 631 P.2d 1260, 1263 (Mont.1981) (quoting *Humbird v. Arnet,* 99 Mont. 499, 44 P.2d 756, 761 (1935)).

The generally recognized badges of fraud are the lack of consideration for the conveyance, the transfer of the debtor's entire estate, relationship between transferor and the transferee, the pendency or threat of litigation, secrecy or hurried transaction, insolvency or indebtedness of the transferor, departure from the usual method of business, the retention by the debtor of possession of the property, and the reservation of benefit to the transferor.[22]

However, " '[t]he facts which are recognized indicia of fraud are numerous, and no court could pretend to anticipate or catalog them all.' " *Koch,* 716 P.2d at 184 (quoting 37 Am.Jur.2d *Fraudulent Conveyances* § 10 (1968)).

In light of the foregoing, we find that, based on facts set forth throughout this opinion, there are genuine issues of material fact as to multiple badges of fraud rendering the trial court's summary judgment inappropriate.[23]

## CONCLUSION

In conclusion, we affirm the trial court's order insofar as it dismisses TSL's claim under § 25–1–11. There are no material issues of fact concerning whether Baird created the trust for his use and benefit under the narrow meaning of the statute and accordingly, he is entitled to judgment as a matter of law. We further hold that there are material issues of fact precluding summary judgment in favor of Baird under § 25–1–4 including whether, 1) Baird was insolvent either before or after the conveyance, 2) Baird received the fair equivalent for conveying approximately $500,000 worth of equity into the trust, and 3) whether the conveyance was made in good faith. There are also material issues of fact precluding judgment under §§ 25–1–7, and 25–1–8. Based on the foregoing, we

reverse the trial court's summary judgment dismissing the constructive and actual fraud claims under §§ 25–1–4, 25–1–7 and 25–1–8 respectively, and remand for further proceedings consistent with our opinion.

GARFF and GREENWOOD, JJ., concur.

22. *Id.* (citing 37 Am.Jur.2d *Fraudulent Conveyances* § 10 at 701 (1968)). *See also Gabaig v. Gabaig,* 717 P.2d 835, 839 (Alaska 1986); *Koch,* 716 P.2d at 184; *Morris v. Holland,* 529 S.W.2d 948, 953 (Mo.Ct.App.1975); *Gifford–Hill & Co. v. Stoller,* 221 Neb. 757, 380 N.W.2d 625, 630 (1986).

23. *Cf. Reliable Furniture Co. v. Fidelity & Guar. Ins. Underwriters, Inc.,* 16 Utah 2d 211, 398 P.2d 685, 688 (1965); *Conder v. A.L. Williams & Assocs., Inc.,* 739 P.2d 634, 637 (Utah Ct.App.1987) (both cases reverse summary judgments in fraud cases on the basis of material issues of fact).